# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

———————————————————————

NATIONAL COUNCIL FOR ADOPTION,
BUILDING ARIZONA FAMILIES on behalf
of itself and its birth-parent clients, birth
parents D.V. and N.L., and baby boy T.W. by
and through his guardian ad litem PHILIP
(JAY) MCCARTHY, JR.,

         Plaintiffs,

         v.                                      Case No. 1:15-cv-00675

SALLY JEWELL, in her official capacity as
Secretary of the United States Department of
the Interior, KEVIN WASHBURN, in his
official capacity as Assistant Secretary of
Indian Affairs, BUREAU OF INDIAN
AFFAIRS, and the UNITED STATES
DEPARTMENT OF THE INTERIOR,

         Defendants.

———————————————————————

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO TRANSFER VENUE

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 3

ARGUMENT ........................................................................................................................ 5

    I.    Plaintiffs' Choice To Sue In NCFA's Home Forum Creates A Strong
        Presumption Against Transfer. ..................................................................... 5

    II.    Arizona Is A Far Less Convenient Forum. ............................................... 7

    III.    Transfer Would Disserve The Interest Of Justice. ................................. 10

CONCLUSION ................................................................................................................... 15

## INTRODUCTION

Plaintiffs in this action, led by Alexandria-based National Council for Adoption ("NCFA"), filed this case in the Eastern District of Virginia to obtain prompt adjudication of their claims that the Indian Child Welfare Act of 1978 ("ICWA"), 25 U.S.C. §§ 1911-23, and the recently issued agency directives as to how ICWA is to be applied, Guidelines for State Courts and Agencies in Indian Child Proceedings, 80 Fed. Reg. 10,146 (Feb. 25, 2015) ("2015 Guidelines"), are invalid. Prompt adjudication of these claims is necessary because ICWA and the 2015 Guidelines, which were made "effective immediately," *id.* at 10,146, now are imposing costs and requirements on NCFA and its member agencies and now are affecting child placements throughout the United States, including the adoption of the child of Plaintiffs D.V. and N.L., and the dependency case of Plaintiff T.W.

The government asks this Court to transfer Plaintiffs' action to the District of Arizona, so that it could be consolidated with a later-filed putative class action now pending there. But transfer of the action under 28 U.S.C. § 1404(a) is plainly inappropriate.

At the threshold, because the Eastern District of Virginia is Plaintiff NCFA's home forum, there is a strong presumption against transfer of its suit to another jurisdiction. The government tries to undermine that presumption by noting that other Plaintiffs do not reside in this District. But under this Court's cases, the presumption applies with equal force when nonresident plaintiffs are joined to a suit brought by a resident plaintiff, and it weighs heavily against transfer.

Even in the absence of that presumption, the government cannot meet its heavy burden of demonstrating that the circumstances of this case strongly favor transfer. "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964). The

government has failed to show that Arizona is a more convenient forum for this action; indeed, it is a demonstrably less convenient forum for litigation of Plaintiffs' claims. It is obviously less convenient for NCFA, and it is less convenient for the Arizona-resident Plaintiffs as well because of the burdens it would impose on Plaintiffs' Washington, D.C.-based pro bono counsel. The government hardly can argue that Arizona is more convenient for *it*; both the Defendants and their counsel are based in Washington, D.C., as is the administrative record which is the only likely source of proof in this action. The presence of similar litigation in Arizona does not make the Eastern District of Virginia an inconvenient forum, and the government has presented no evidence of inconvenience. But that is what the government *must* show to justify a Section 1404(a) transfer; its failure to do so means that its transfer motion must be denied.

Transfer of this action to Arizona also is contrary to the interest of justice. The government says that transfer promotes judicial economy because it would enable this action to be consolidated with the later-filed action in Arizona. But on a Section 1404(a) motion, a court must consider the circumstances as they existed as of the filing of the complaint—*i.e.*, before there was any Arizona action at all. This accords with the first-to-file rule, under which, "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (quoting *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3rd Cir. 1988)). The government says an "exception is warranted," but for support, it points back only to the "balance of conveniences," which point decidedly to this District. In any event, the government's claims of efficiency are overstated; this action raises claims not present in the Arizona case—most notably the claim under the Administrative Procedure Act ("APA") as to which NCFA already has sought summary judgment.

Transfer of this action, on the other hand, is sure to impose a substantial delay on the resolution of Plaintiffs' claims. That is not only because the District of Arizona resolves cases at a significantly slower pace than this District, but also because the class action allegations in the Arizona case will entail significant litigation collateral to the merits, including possible interlocutory appeals, before the merits are finally adjudicated. That delay would be immensely prejudicial to Plaintiffs—especially Plaintiffs D.V. and N.L. who are trying to place their child in an adoptive home, and Plaintiff T.W. who is profoundly disabled and therefore has an urgent need for permanency in his placement. The prejudice the Plaintiffs will suffer as a result of the delay imposed by transfer to Arizona far outweighs the efficiency the government claims would be gained—particularly because the government could obtain nearly the same efficiency through a stay of the Arizona action. Transfer to Arizona disserves the interest of justice and for that reason also the government's motion to transfer should be denied.

## FACTUAL BACKGROUND

Plaintiffs NCFA, Building Arizona Families, birth parents D.V. and N.L., and baby boy T.W. filed this lawsuit in this Court on May 27, 2015. *See* Compl., ECF No. 1 (May 27, 2015). Plaintiffs challenged the 2015 Guidelines as invalid under the APA, because they were issued without notice-and-comment rulemaking. *Id.* ¶¶ 171-80. Plaintiffs also brought several constitutional challenges to the 2015 Guidelines and to ICWA. *Id.* ¶¶ 181-228.

NCFA is a non-profit adoption policy organization headquartered in Alexandria, Virginia. Johnson Decl., ECF No. 21-1, ¶ 2. NCFA's entire staff and legal team reside in the Eastern District of Virginia or in the Washington, D.C., metro area, and a substantial portion of the injuries it has suffered has occurred in this District. *Id.* Plaintiffs Building Arizona Families, birth parents D.V. and N.L., and baby boy T.W. all reside in Arizona, but nonetheless chose to bring their claims in the Eastern District of Virginia alongside the NCFA because their child

placements currently are being affected by the 2015 Guidelines that NCFA is challenging; because they wished to obtain a prompt adjudication of their administrative-law and constitutional claims; and because qualified pro bono counsel in Washington, D.C., were prepared to litigate their claims in this District.

Defendants are all located in Washington, D.C.   The 2015 Guidelines likely were principally developed in Washington, D.C., and Washington, D.C., is likely where records of the defendants' decisionmaking are located.   According to the 2015 Guidelines, they were promulgated in "Washington, D.C.," and were made "effective immediately" throughout the country.  80 Fed. Reg. at 10,146.

On July 30, 2015, NCFA moved for partial summary judgment on its APA claim.  ECF Nos. 20-21.   Later that day, the government filed a motion seeking to transfer this case to Arizona, ECF Nos. 28-29, as well as a motion seeking to stay indefinitely the government's time to respond to Plaintiffs' complaint, ECF No. 27.  This Court refused that relief, ECF No. 34, and the government filed a motion to stay or to delay briefing of NCFA's motion for partial summary judgment, ECF No. 33.  NCFA's motion for partial summary judgment has been noticed for a hearing on August 20, 2015.  ECF No. 36.

The Arizona lawsuit is a putative class action filed by Plaintiffs baby girl A.D. and baby boy C., by Carol Coghlan Carter, their next friend; S.H. and J.H., foster/adoptive parents of baby girl A.D.; and M.C. and K.C., foster/adoptive parents of baby boy C.  *See* Compl., *A.D. et al. v. Washburn et al.*, No. 2:15-cv-01259 (D. Ariz. July 6, 2015) (the "Arizona Compl.").  Plaintiffs in that case all reside in Arizona, and they have brought their claims on behalf of similarly situated Arizona residents.  *Id.* ¶¶ 9-13, 30.  The defendants in the Arizona case are Kevin Washburn, Sally Jewell, and the U.S. Department of the Interior, as well as Gregory McKay, Director of the

Arizona Department of Child Safety.  *Id.* ¶¶ 14-16.  The claims in the Arizona case primarily focus on violations of Plaintiffs' and the putative class plaintiffs' equal protection and due process rights.  *Id.* ¶¶ 88-108.  The Arizona case also raises constitutional challenges under the First Amendment, the Tenth Amendment, and the Indian Commerce Clause.  *Id.* ¶¶ 109-18.  Finally, plaintiffs in that case raise a narrow APA challenge to the 2015 Guidelines, which is limited to whether BIA exceeded its lawful authority by extending ICWA's jurisdiction-transfer provision to all child custody proceedings.  *Id.* ¶¶ 119-23.

## ARGUMENT

In determining whether to grant a motion to transfer to another venue where the case could have been brought, this Court considers four factors:  "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice."  *Wenzel v. Knight*, No. 14-CV-432, 2015 WL 222179, at *1 (E.D. Va. Jan. 14, 2015) (quotation marks omitted).[1]  "The party seeking transfer bears the burden of proving that the circumstances of the case are *strongly* in favor of transfer."  *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010) (quotation marks omitted).  None of those factors supports transfer here.  This Court should deny the government's motion.

**I.      Plaintiffs' Choice To Sue In NCFA's Home Forum Creates A Strong Presumption Against Transfer.**

When considering a motion for transfer, a plaintiff's choice of forum is "entitled to 'substantial weight,' especially where the chosen forum is the plaintiff's home forum or bears a substantial relation to the cause of action."  *Heinz Kettler*, 750 F. Supp. 2d at 667; *accord Trs. of*

---

[1]   Plaintiffs do not dispute that, under Section 1391, this action could have been brought in the District of Arizona because at least one Plaintiff resides there.  The government further says, "Plaintiffs causes of action arguably arose there."  Mot. 7.  To be sure, ICWA and the 2015 Guidelines impose harm on Plaintiffs where they reside, but the injuries stem from ICWA and the 2015 Guidelines themselves, which are products of Washington, D.C.

the *Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, --- F.3d ---, 2015 WL 3940851, at *5 (4th Cir. June 29, 2015); *Fed. Home Loan Mortg. Corp. v. Mortg. Guar. Ins. Corp.*, No. 1:12-cv-539, 2012 WL 2673151, at *4 (E.D. Va. July 5, 2012).

The Eastern District of Virginia indisputably is NCFA's home forum.  *See* Mot. 7 ("[O]ne of the Plaintiffs—the National Council for Adoption—resides in the Eastern District of Virginia.").  This Court's precedent therefore directs that NCFA's decision to file suit here be accorded great weight in the transfer analysis.  *See, e.g.*, *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 623 (E.D. Va. 2002) (Lee, J.) ("It is well settled that a court should rarely disturb a plaintiff's choice of forum unless the balance of hardships clearly favor transfer in favor of the defendant.").

The government attempts to undermine this presumption against transfer by noting that the other Plaintiffs in this action do not reside in the Eastern District of Virginia.  But under the case law of this District, that does not matter.  In *Heinz Kettler*, this Court gave "substantial weight" to the fact that Virginia was the "home forum" of one plaintiff, even though the other plaintiff was a German corporation.  750 F. Supp. 2d at 667-68.  Other courts have similarly recognized that plaintiffs' choice to sue in the home forum of one plaintiff triggers deference, even when some plaintiffs reside in other forums.  For example, in considering a motion to transfer an APA suit out of the District of Columbia, the district court applied "a strong presumption in favor of the chosen forum" even though most of the plaintiffs were not located in the District.  *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 11 (D.D.C. 2007).  Critically, "[o]f the five plaintiffs that filed suit . . . *at least one* . . . ha[d] its headquarters in the" district.  *Id.* at 11 & n.3 (emphasis added).

NCFA's choice to sue in its home forum cannot be defeated by the fact that other

6

Plaintiffs residing outside the district have joined in NCFA's action.  The fact that NCFA resides in Alexandria creates a "strong presumption" against transfer, "[r]egardless of" where "the remaining plaintiffs are" located.  *Sierra Club*, 523 F. Supp. 2d at 11-12.  To avoid the presumption against transfer, the government would have had to move to sever NCFA's claims from those of the other Plaintiffs, show that severance is appropriate, and then move to transfer the severed claims.  Having chosen instead to attempt to transfer the entire action, including the claims of Alexandria resident NCFA, the government cannot now evade application of this Court's weighty presumption against transfer of cases filed in a plaintiff's home forum.

## II.     Arizona Is A Far Less Convenient Forum.

Because courts typically defer to a plaintiff's choice of venue, "to convince the Court to disregard [plaintiff's] initial choice of forum, [defendants] must meet the burden of demonstrating that the balance of convenience among the parties and witnesses is *strongly* in favor of the forum to which transfer is sought."  *Wenzel*, 2015 WL 222179 at *2 (emphasis in original; quotation marks omitted).  To make that showing, the government "bears the burden of demonstrating that the Eastern District of Virginia is an *inconvenient* forum in which to litigate, not simply that the [District of Arizona] would be more convenient."  *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718 n.15 (E.D. Va. 2005) (emphasis added); *see also Van Dusen*, 376 U.S. at 645-46 ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient").  The government's motion does not even attempt to satisfy the burden of demonstrating that this District is an inconvenient forum, nor can it.

The government instead argues that the convenience of the parties is "of little relevance here" because the Plaintiffs' claims turn primarily on "questions of law."  Mot. 14.  Were it true that "neither the convenience of the parties and witnesses nor the ease of access to sources of

proof" were affected by the forum, then the government's motion would have to be denied. *See Tuttle v. Jewell*, 952 F. Supp. 2d 203, 208 (D.D.C. 2013) (denying government's transfer motion because "[r]esolution of [Plaintiffs'] claims will turn entirely upon the administrative record before Interior" and thus the convenience factors "do not favor transfer of the matter"). The government has the burden of demonstrating that "the Eastern District of Virginia is an inconvenient forum in which to litigate," *Samsung Elecs.*, 386 F. Supp. 2d at 718 n.15, and the government does not—indeed, cannot—argue that it would be inconvenient to resolve Plaintiffs' questions of law in this forum.

But the government's claim that the convenience of the parties is of "little relevance" to this transfer analysis seems dubious, at best. Section 1404(a) permits transfer "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. 1404(a). There is no "or" between the two statutory phrases; the Supreme Court has made clear that the convenience of the parties is the touchstone in any transfer analysis. *Van Dusen*, 376 U.S. at 634-35 ("Congress, in passing § 1404(a), was primarily concerned with the problems arising where, despite the propriety of the plaintiff's venue selection, the chosen forum was an inconvenient one."). "To this end it empowers a district court to transfer 'any civil action' to another district court if the transfer is warranted by the convenience of parties and witnesses *and* promotes the interest of justice." *Id.* at 616 (emphasis added).

Arizona is a far less convenient forum for the litigation of this action. Arizona obviously would be a less convenient forum for Alexandria resident Plaintiff NCFA. NCFA's sole office is in Alexandria. Johnson Decl., ECF No. 21-1, ¶ 2. NCFA's entire staff and legal team reside in the Eastern District of Virginia or in the Washington, D.C., metro area, and a substantial portion of the injuries it has suffered has occurred in this District. *Id.* As a nonprofit, it would

significantly burden NCFA to litigate in Arizona. *Id.*

The government, however, suggests that Arizona is a more convenient forum for the other Plaintiffs, who are residents of Arizona. But this Court does not "second-guess" a plaintiff's determination of its own convenience. *Wenzel*, 2015 WL 222179, at *2. And it should not do so here, where Plaintiffs located qualified pro bono counsel in Washington, D.C., to litigate their claims in conjunction with those brought by NCFA. Arizona, 2,300 miles from Alexandria, certainly is not a more convenient forum for Plaintiffs' Washington, D.C.-based counsel, and transfer of this action there certainly would impose significant monetary and non-monetary costs on them. Indeed, if the government succeeds in consolidating this action with the later-filed Arizona action, *see* Mot. 10-12, Plaintiffs could be deprived of their choice of counsel altogether because the Arizona plaintiffs have named an Arizona state agency as a defendant, and Plaintiffs' lead counsel, Gibson, Dunn & Crutcher LLP, represents an Arizona state agency in another litigation matter. *Tohono O'Odham Nation v. Ducey*, No. 15-cv-01135 (D. Ariz.). The government should not be allowed to burden the Plaintiffs' efforts to have their claims heard in this manner. *Cf. Hazan v. U.S. DHS–TSA*, No. 07-cv-497, 2008 WL 4159700, *1 (S.D. Cal. Sept. 8, 2008) (denying the government's motion to transfer because of "the relative means of the parties").

And that is especially so given that the Eastern District of Virginia is a demonstrably more convenient forum than Arizona *for the government*. Like Plaintiffs' counsel, the government's lead lawyers are based in Washington, D.C. So are their client agencies and officials. The events giving rise to this litigation, the promulgation of the 2015 Guidelines and the enactment of ICWA, occurred in Washington, D.C. And the records of the agency's decisionmaking with respect to the 2015 Guidelines also likely are located in Washington, D.C.

The most salient point, given the applicable legal standard and burden of proof, is that the government has come forward with no evidence whatsoever that litigating these claims in the Eastern District of Virginia would be inconvenient for it.  *See Wenzel*, 2015 WL 222179 at *3 ("[T]he party seeking transfer has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience.") (quotation marks omitted).  That compels denial of the government's motion.

**III.     Transfer Would Disserve The Interest Of Justice.**

Lacking any argument that litigation in this District is inconvenient, the government rests its motion on the "interest of justice," and more specifically, a promise of "judicial economy" that would result from consolidation of this action into the later-filed Arizona action.  But the government's claimed judicial economy cannot be considered in the Section 1404(a) analysis because it arose after the filing of Plaintiffs' complaint in this District.  On the other side of the ledger, ICWA and the 2015 Guidelines are causing Plaintiffs real harms and transfer to Arizona inarguably will delay the resolution of their claims.  The interest of justice would be best served by prompt adjudication of Plaintiffs' claims—not by transfer to Arizona.

When considering the interest of justice, courts look to "the pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties, and the possibility of harassment," among other factors.  *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 738 (E.D. Va. 2007).

The government notes the pendency of the later-filed Arizona action and argues that transfer of this case to Arizona will reduce duplicative litigation over ICWA and the 2015 Guidelines.  That argument cannot justify transfer under Section 1404(a).  "Section 1404(a)

10

directs the attention of the judge who is considering a transfer to the situation which existed *when suit was instituted*." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) (emphasis added; citation omitted). Thus, "considerations of judicial economy arising *after* the filing of a suit" are not relevant to the transfer analysis. *In re EMC*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (emphasis in original). Rather, the court may consider only "judicial economy benefits which would have been apparent at the time the suit was filed." *Id.*; *accord*, *e.g.*, *Wellogix Tech. Licensing LLC v. Automatic Data Processing, Inc.*, No. 11-cv-401, 2013 WL 1729606, at *7 (E.D. Tex. Mar. 19, 2013) (denying a motion to transfer to a forum where a related case was filed on the same day because "at the time this suit was filed, there were no apparent judicial economy benefits" to proceeding in the other forum); *DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 13-cv-919, 2014 WL 6847569, at *4 (E.D. Tex. Nov. 7, 2014) (although a related lawsuit "ha[d] since been filed," judicial economy was neutral "based on the situation which existed when suit was instituted") (quotation marks omitted).

When Plaintiffs initiated this suit, *there was no Arizona action at all* and thus no "judicial economy" to be gained by transferring the case there. That alone defeats the government's "judicial economy" argument. And that result aligns with the "strong presumption of priority" this court accords to a first-filed actions in resolving motions to transfer. *Fed. Home Loan Mortg. Corp. v. Mortg. Guar. Ins. Corp.*, No. 1:12-cv-539, 2012 WL 2673151, at *4 (E.D. Va. July 5, 2012); *see also Ellicott Machine Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 (4th Cir. 1974) (because a plaintiff is "entitled to choose its forum," a "case ought to be tried in the district court in which it was first filed"). Indeed, in resolving motions to transfer, this Court applies the "first to file rule" as a "bright-line rule that easily resolves what can be a difficult assessment as far as where competing lawsuits should proceed." *Fed. Home Loan Mortg. Corp.*,

2012 WL 2673151, at *4.  There is no blanket exception to this rule for first-filed cases that would not be properly venued in the forum of the later-filed case.  To the contrary, "[t]his rule is generally followed, absent a showing of the balance of conveniences or special circumstances favoring transfer."  *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*, 20 F. Supp. 2d 948, 954 (E.D. Va. 1998).  Here, the balance of conveniences weighs decidedly against transfer and the government points to no "special circumstances" warranting departure from the first-to-file rule.  Indeed, the government points to no precedent that even remotely suggests that the "bright-line" first-to-file rule may be disregarded in favor of the forum of a later-filed case that is not as advanced as the earlier-filed case.  Yet that is the ruling the government seeks here.[2]

Rejection of the government's argument is especially appropriate because the government's claims of judicial economy are overstated.  As related in Plaintiffs' opposition to the government's most recent stay motion, the claims in the two actions are not parallel.  Pls.' Mem. in Opp. to Defs.' Mot. to Stay Response Deadline, or, in the Alternative, for an Enlargement of Time, at 2-3, ECF No. 31 (July 31, 2015).  Importantly, the claim on which Plaintiff NCFA has sought partial summary judgment is not raised in the Arizona action at all.

---

[2]  The transfer cases cited by the government almost all involve district courts transferring later-filed suits to the first-filed forum and thus are consistent with the rule of *Hoffman v. Blaski* that transfer must be considered as of the time of filing of the complaint.  *See, e.g.*, *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (transferring suit filed in the Eastern District of Virginia to the District of South Carolina, where a similar suit was filed two months earlier); *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 937 (E.D. Va. 2005); *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 20, 26 (1960); *Gen. Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 363-64, 369 (4th Cir. 1967); *George Mason Univ. Found., Inc. v. Morris*, No. 3:11-cv-848, 2013 WL 6449109, at *8 (E.D. Va. Dec. 9, 2013).  Only *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*, 20 F. Supp. 2d 948 (E.D. Va. 1998), involved transfer to a forum of a later-filed case; but there the later-filed action was the first to effect service.  *Id.* at 955.  In keeping with both *Hoffman* and the first-to-file rule, this Court routinely denies motions to transfer a first-filed case to a district where a later-filed case is pending.  *See, e.g.*, *Smithfield Packing Co. v. V. Suarez & Co.*, 857 F. Supp. 2d 581, 587-89 (E.D. Va. 2012).

And the constitutional claims raised by Plaintiffs D.V., N.L., and T.W., are as-applied to them individually, rather than on a class-wide basis.  The government's motion thus would place on the transferee court the obligation to decide additional claims for relief.  Shifting distinct claims from one forum to another does not promote "judicial economy."  It generates only expense and delay.

Other interest-of-justice factors weigh even more strongly against transfer to Arizona. Plaintiffs filed suit in this District with the expectation that their claims would be promptly adjudicated.  The median time to trial in this District is 10.7 months, compared to 30.1 months to trial in Arizona.  *See* U.S. Courts, *Comparison of Districts Within Circuit*, http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2015/03/31-3 (Mar. 31, 2015).  Prompt adjudication is important to Plaintiffs because ICWA and the 2015 Guidelines are injuring them now.  As stated in the declaration in support of NCFA's motion for partial summary judgment, NCFA is expending resources today to educate members about the 2015 Guidelines that the agency needlessly made "effective immediately."  Johnson Decl., ECF No. 21-1, ¶¶ 7-14.  Even more importantly, the 2015 Guidelines and ICWA are impacting time-sensitive child placement decisions.  Plaintiffs D.V and N.L. have a right to—and need to— determine whether ICWA and the 2015 Guidelines can frustrate their decision to place their child for adoption with a non-Indian family.  Compl., ECF No. 1, ¶¶ 31-35, 203-23.  Plaintiff T.W. is profoundly disabled and needs a permanent placement to continue to make developmental progress; he has a right to—and needs to—know whether ICWA and the 2015 Guidelines could disrupt his placement.  *Id.* ¶¶ 20-30, 181-202.  These Plaintiffs are entitled to adjudication on

their claims that ICWA and the 2015 Guidelines cannot be applied to them.[3]

But transfer to Arizona will all but assure that adjudication of Plaintiffs' claims is substantially delayed.  Because the Arizona case is a putative class action, there is likely to be protracted litigation on class certification, potentially including an appeal to the Ninth Circuit under Fed. R. Civ. P. 23(f).  If it remains in this District, on the other hand, this action will be promptly resolved.  Plaintiffs have a motion for summary judgment on one claim already on file.  The government's response to Plaintiffs' complaint has been extended to August 18.  Assuming the government moves to dismiss, because (as the government has acknowledged) this case involves only questions of law, Plaintiffs expect to file cross-motions for summary judgment on their remaining claims.  Under the local rules, those motions could be fully briefed within weeks.  The class action issues present in the Arizona action preclude that case from proceeding on a similar path.  Foisting such a delay on Plaintiffs is not in the interest of justice.

The relative progress of this action and its presumption of priority as the first-filed action each suggest that if the government really wants to prevent duplicative litigation (as opposed to simply wanting delay of *any* adjudication) it should seek a stay of the Arizona case pending this Court's disposition of the legal issues in this action.  Ninth Circuit law permits a district court to stay a case to allow an earlier-filed case to proceed in another district, even where the parties are

---

[3]   In its most recent filing in support of a stay, the government stated matter-of-factly that the 2015 Guidelines are "noncompulsory" and questioned how Plaintiffs could be injured by such agency action.  Defs.' Reply in Support of its Mot. to Stay Summ. J. Briefing, or, in the Alternative, for an Enlargement of Time, at 3, ECF No. 39 (Aug. 6, 2015).  The answer is that the 2015 Guidelines nowhere state they are "noncompulsory."  Quite to the contrary, they tell state courts and state-licensed child placement agencies what they "must" do 101 times.  Compl., ECF No. 1, ¶¶ 57-67.  In contrast to BIA's previous guidelines, language that the guidelines are not intended to be binding is noticeably absent.  *Id.* ¶¶ 57-58.  The government's abrupt statement that the 2015 Guidelines are "noncompulsory" constitutes a convenient litigation position, not adopted by the agency, and which (importantly) the government is free to change at any time.  Plaintiffs' child placements are entitled to greater certainty than that.

not the same.  *See, e.g.*, *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239-40 (9th Cir. 2015).  Or the government can seek relief from the Judicial Panel on Multidistrict Litigation.  As the Federal Circuit recently recognized, "the judicial economy of having the same judge handle multiple suits . . . should [not] dominate the transfer inquiry" because "the MultiDistrict Litigation Procedures exist to effectuate this sort of efficiency."  *In re EMC*, 501 F. App'x at 976.  The fact that the government has instead sought to transfer this action suggests that the government is less interested in judicial economy than in avoiding the law of the Fourth Circuit and delaying the adjudication of the legal issues presented in Plaintiffs' complaint.  Those, however, are not legitimate grounds for transfer.

## **CONCLUSION**

For the foregoing reasons, this Court should deny the government's motion to transfer.

Date:  August 7, 2015                    Respectfully submitted,

                                         /s/  Jacob S. Siler
                                         JACOB S. SILER (Va. Bar No. 80934)
                                         MATTHEW D. MCGILL (*pro hac vice*)
                                         ROBERT GONZALEZ (*pro hac vice*)
                                         GIBSON, DUNN & CRUTCHER LLP
                                         1050 Connecticut Avenue, N.W.
                                         Washington, DC  20036
                                         Telephone:  (202) 955-8500
                                         Facsimile:  (202) 467-0539

                                         LORI ALVINO MCGILL (*pro hac vice*)
                                         QUINN EMANUEL URQUHART
                                         & SULLIVAN LLP
                                         777 6th Street, N.W.
                                         Washington, DC 20001
                                         Telephone:  (202) 538-8210
                                         Facsimile:  (202) 538-8100

                                         MARK D. FIDDLER (*pro hac vice*)
                                         FIDDLER LAW OFFICE, P.A.
                                         6800 France Avenue So., Suite 190
                                         Minneapolis, MN  55435
                                         Telephone:  (612) 822-4095
                                         Facsimile:  (612) 822-4096

                                         *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of August, 2015, I will cause to be electronically filed

the foregoing with the Clerk of the Court for the Eastern District of Virginia using the CM/ECF

system, which will then send a notification of such filing (NEF) to the following:

> Dennis C. Barghaan, Jr.
> Assistant U.S. Attorney
> 2100 Jamieson Avenue
> Alexandria, Virginia 22314
> Telephone: (703) 299-3891
> Fax: (703) 299-3983
> Email: dennis.barghaan@usdoj.gov

Date:  August 7, 2015

> /s/  Jacob S. Siler
> JACOB S. SILER (Va. Bar No. 80934)
> GIBSON, DUNN & CRUTCHER LLP
> 1050 Connecticut Avenue, N.W.
> Washington, DC  20036
> Telephone:  (202) 955-8500
> Facsimile:  (202) 467-0539
>
> *Counsel for Plaintiffs*