UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NATIONAL COUNCIL FOR ADOPTION, BUILDING ARIZONA FAMILIES on behalf of itself and its birth-parent clients, birth parents D.V. and N.L., and baby boy T.W. by and through his guardian ad litem PHILIP (JAY) MCCARTHY, JR., <br><br> Plaintiffs, <br><br> v. <br><br> SALLY JEWELL, in her official capacity as Secretary of the United States Department of the Interior, KEVIN WASHBURN, in his official capacity as Assistant Secretary of Indian Affairs, BUREAU OF INDIAN AFFAIRS, and the UNITED STATES DEPARTMENT OF THE INTERIOR, <br><br> Defendants. | Civil Action No. 1:15cv00675 |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE**

Pursuant to Local Rule 7(F)(1), defendants, through their undersigned counsel, hereby respectfully submit this reply memorandum of law in support of their motion to transfer venue in the above-captioned action.

**INTRODUCTION**

Plaintiffs do not seriously dispute that the Arizona action, filed less than six weeks after this action, significantly overlaps with this complex constitutional case and creates the real risk of not only inefficient judicial proceedings but also confusing or inconsistent judgments from

1

two different courts. This risk is borne not only by Defendants, but also by State child-welfare courts, Indian children, Indian parents, and Indian tribes across the country, who may be harmed by lack of clarity regarding the legal effect of the Indian Child Welfare Act of 1978 ("ICWA"), 25 U.S.C. §§ 1901-1963, and the BIA Guidelines. Nor do Plaintiffs dispute that four out of five plaintiffs reside in Arizona, and that these Arizona plaintiffs (and not the sole Virginia plaintiff) bring most of the claims in this action. The Arizona Plaintiffs' claimed injury is tightly bound up in proceedings that are ongoing or anticipated in Arizona state courts and involve Arizona Indian tribes. Given the overlapping cases, the strong nexus of Plaintiffs and their claimed injury with Arizona, and the extremely limited connection with this District, transfer is warranted.

Plaintiffs have not presented any compelling evidence that ties this case to Virginia. In fact, much of their argument against transfer turns on conceded connections with the District of Columbia, not the Eastern District of Virginia. Plaintiffs' Memorandum in Opposition to Defendants' Motion to Transfer Venue, ECF No. 40 (hereinafter, "Opp.") at 9 (the "events giving rise to this litigation" occurred in the District of Columbia). Similarly, Plaintiffs' opposition to transfer focuses heavily on convenience of their Washington, D.C. counsel, which is not a factor that this Court considers in determining a transfer motion. At any rate, the notion that the two international law firms representing Plaintiffs would be unable to litigate in Arizona a matter that they assert can be decided on issues of law is not credible.

Plaintiffs have attempted to manufacture urgency and bolster their connection to this District by filing a one-count summary judgment motion – brought only by the sole Virginia Plaintiff National Council for Adoption ("NCFA") – two days after Defendants' counsel informed them of this planned transfer motion. But this preemptive tactic (which this Court has now stayed) does not affect the strong equities in favor of transfer to the District of Arizona,

since after this partial summary judgment motion is heard, a court still must dispose of the remaining seven claims of the Arizona plaintiffs. Plaintiffs also allege ongoing harm to the individual Arizona plaintiffs involved in Arizona state court proceedings, but this urgency and harm is fabricated given the non-binding nature of the challenged Guidelines, as well as the lack of evidence that the individual plaintiffs are actually suffering any injury from the application of these Guidelines or ICWA itself. Nor should this Court put weight on the relative speed of the courts' dockets, particularly when the District of Arizona appears to be an expeditious district with respect to civil litigation, and there is no reason that the District of Arizona cannot address Plaintiffs' claims in a timely way. Plaintiffs are challenging a non-binding Guidelines document that was released in February 2015, as well as a federal Indian law statute that was enacted nearly 38 years ago. Their fears of delay are overblown. There are compelling reasons to transfer this case to Arizona, and Defendants' motion should be granted.

## ARGUMENT

**I.  Plaintiffs' Choice of Forum Should Not Be Given Great Weight.**

The Supreme Court has made clear that district courts have broad discretion to order transfer, notwithstanding a plaintiff's choice of forum. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 n.23 (1981) (a plaintiff's "forum choice should not be given dispositive weight" and the "balance of conveniences" should be weighed). Plaintiffs' choice of forum is entitled to particularly little weight where, as here, it is not the home forum for four out of five plaintiffs, and bears no connection to the cause of action. Even NCFA, though headquartered in this District, purports to bring suit on behalf of over 60 members in 225 offices across the United States. *See* Complaint, ECF No. 1, ¶¶ 36, 164.

Plaintiffs contend that this District is home to the so-called lead plaintiff in this case, and now try to characterize the Arizona plaintiffs as having "joined" NCFA's action. Opp. at 6-7. But this is belied by the fact that NCFA brings only two of the eight counts in the complaint, and it is the Arizona plaintiffs that seek constitutional relief aimed against a 37-year-old federal Indian law statute. Opp. at 1. Moreover, courts are not required to investigate which plaintiff first came up with the idea to bring an action and which plaintiffs later decided to "join" the venture; here, each of the Plaintiffs brought the instant action together at the same time. The only relevant question is the location of the Plaintiffs' residences, and here, the answer is largely in Arizona. And, Plaintiffs' supposed urgency in having this action heard is almost entirely based on alleged harms occurring in Arizona to the Arizona plaintiffs. The interests and claims of the Arizona plaintiffs, who are parties to all eight counts in the complaint, clearly predominate this action, and Arizona should effectively be considered Plaintiffs' home forum.[1]

The fact that only one Plaintiff calls the Eastern District of Virginia home while the remainder reside in the district where transfer is sought means the burden of demonstrating transfer is "substantially diminished." *Citizen Advocates for Responsible Expansion v. Dole*, 561 F. Supp. 1238, 1239 (D.D.C. 1983). In *Dole*, the district court for the District of Columbia transferred venue even though one of the plaintiffs was headquartered in D.C. The court assessed that overall "Plaintiffs have little connection to this forum, but strong ties [to the transferee forum]" because most of the plaintiffs resided there and the "controversy is closely

---

[1] It is not surprising that Arizona would be the home forum to all of the Indian plaintiffs in this action, as Arizona is home to 21 federally recognized Indian tribes and has the third-largest population of individuals who identify as American Indian. *See* Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 80 Fed. Reg. 1942-02 (Jan. 14, 2015); U.S. Census Bureau, *The American Indian and Alaska Native Population 2010* (January 2012), Fig. 3, *available at* <https://www.census.gov/prod/cen2010/briefs/c2010br-10.pdf> (visited Aug. 13, 2015).

connected to that forum." *Id.* at 1239-40. The same is true here: most of the Plaintiffs reside in Arizona and the child-custody proceedings are occurring there, whereas the only connection to the present forum is that one national organization has its headquarters here.

Plaintiffs' opposition demonstrates that this District has little connection to the case's operative facts. *See Board of Trustees v. Sullivant Ave. Properties, LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007) ("the amount of weight [assigned to plaintiff's choice of venue] varies depending on the significance of the contacts between the venue chosen by Plaintiff and the underlying cause of action"); *Thomas v. Accounts Receivable Mgmt., Inc.*, No. 3:10-CV-221, 2010 WL 4340108, at *2 (E.D. Va. Oct. 22, 2010) ("A plaintiff's choice of forum loses influence when the plaintiff chooses a forum with little relationship to the action."). Instead, Plaintiffs appear to treat the Eastern District of Virginia and the District of Columbia as one district. Plaintiffs have repeatedly noted that this action has numerous connections with the **District of Columbia**, where the federal agencies are located and where, in their own words, the "events giving rise to this litigation, the promulgation of the 2015 Guidelines and the enactment of ICWA" occurred. Opp at 5, n.1; 9. But Plaintiffs did not bring their suit in the District of Columbia, and mere geographic proximity to the district that is a locus of the cause of action hardly justifies deference to a plaintiff's choice of a different district. *See, e.g.*, *Case v. Miller*, No. 3:09-CV-430, 2009 WL 2762606, at *3 (E.D. Va. Aug. 27, 2009) (finding plaintiff's choice of venue in the Eastern District of Virginia was not entitled to substantial weight when the cause of action occurred in the Western District of Virginia); *see also Holland v. A.T. Massey Coal*, 360 F. Supp. 2d 72, 77 (D.D.C. 2004) (granting transfer where "agency whose decision they ask this Court to evaluate" is in another district, despite plaintiff's activities and counsel being located in D.C.).

5

The cases Plaintiffs cite in support of their argument are easily distinguishable. In *Verizon Online Servs., Inc. v. Ralsky*, this Court denied transfer, but Verizon, a Virginia company, was the sole plaintiff. 203 F. Supp. 2d 601, 624 (E.D. Va. 2002). Moreover, "a substantial part of the events and property harmed … occurred in Virginia," facts not present here. *Id.* at 604, 623. *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, is also inapposite, as the court did not address the argument that the home forum of the other non-Virginian plaintiff should be considered as a part of the transfer calculus. 750 F. Supp. 2d 660, 667-68 (E.D. Va. 2010). Moreover, the *Heinz Kettler* plaintiff was a foreign corporation that did not have a "home forum" in the United States, and was not a resident of the transferee forum, as is the case for the four other plaintiffs here. *Id.* at 662. And, in *Sierra Club v. Van Antwerp*, the court stated: "Because motions to transfer require an individualized case-by-case analysis wherein courts have discretion, this Court does not rule that one plaintiff's residency will always warrant deference to the chosen forum of multiple plaintiffs." 523 F. Supp. 2d 5, 12 n.4 (D.D.C. 2007). The Court continued: it "could easily conceive of a set of circumstances where relevant factors would weigh against deferring to plaintiff's selected venue despite one plaintiff's residency in that district[,]" *id,* and cited *Dole*, 561 F. Supp. at 1239-40, as an example of such circumstances. As discussed above, *Dole*, not *Sierra Club*, provides a closer analogy to the circumstances facing this court. In such circumstances, where there are strong connections to the District of Arizona, a substantially overlapping case there, and only one minor tie to the Eastern District of Virginia, transfer is warranted.

## II. Arizona Is the More Convenient Forum.

Plaintiffs' primary argument in support of the convenience of this District is that it is closer to – though not the actual location of – Plaintiffs' counsel. Convenience to counsel is not

a factor in evaluating a motion to transfer. *Cognitronics Imaging Systems, Inc. v. Recognition Research, Inc.*, 83 F. Supp. 2d 689, 698 (E.D. Va. 2000) ("convenience to counsel is not an appropriate matter for consideration" in transfer motion); *CIVIX-DDI, LLC v. Loopnet, Inc.*, No. 2:12-CV-2, 2012 WL 3776688, at *5 n.7 (E.D. Va. Aug. 30, 2012) (no consideration is given to convenience of counsel); *Case*, 2009 WL 2762606, at *3 (granting transfer and noting that "the convenience of counsel [is] not relevant to this analysis"); *accord In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) (finding that it is an abuse of discretion for district court to consider convenience of counsel in deciding a motion to transfer).

    This is particularly true here, where Plaintiffs are represented by two international law firms headquartered on the West Coast, as well as a Minneapolis firm that cannot claim that D.C. is more convenient than Arizona. *See Office, Gibson, Dunn & Crutcher*, *available at* <http://www.gibsondunn.com/offices/default.aspx> (visited Aug. 13, 2015) (providing that firm has more than 1,200 lawyers in 18 offices in major cities throughout the United States, including six offices west of the Mississippi River); *Offices, Quinn Emanuel Urquhart & Sullivan, LLP*, *available at* <http://www.quinnemanuel.com/#4> (visited Aug. 13, 2015) (providing that firm has more than 700 lawyers in 18 offices around the globe, including five west of the Mississippi River). Nor can Plaintiffs claim that this is a more convenient forum for counsel for the government, since the Department of Justice's Environment and Natural Resources Division (assigned to handle civil Indian law matters) is routinely involved in litigation in every judicial district in the country, including 46 cases pending in the District of Arizona (many involving the Department of the Interior).

    Plaintiffs next argue that they might be deprived of one of the three law firms handling their case because of an alleged conflict of interest created by Gibson Dunn's representation of

7

an Arizona state agency in an unrelated matter. Opp. at 9. Even assuming that this is a genuine conflict, this does not weigh against transfer because the Arizona court may consider this contention in determining whether *actual formal* consolidation with the Arizona action is appropriate.[2] Plaintiffs do not dispute that the standard for consolidation is otherwise met. But even if this case is not consolidated with the pending Arizona action, the Arizona district court may still manage the cases to promote judicial economy and minimize the risk of inconsistent judgments in a way that cannot occur if the two cases remain in different districts.[3]

In contrast, Plaintiffs' opposition demonstrates that Arizona is a more convenient forum because nearly all of the potentially relevant facts, witnesses, and documents are located there.[4] While Defendants contend that Plaintiffs claims may be dismissed as a matter of law, if the Court disagrees, there may be need for discovery into facts regarding standing or the Arizona plaintiffs' as-applied constitutional claims. Plaintiffs' demand for urgency is dependent on the

---

[2] It is worth noting that Plaintiffs' counsels' potential conflict with the State of Arizona explains why Plaintiffs in this case, unlike those in the Arizona action, have failed to name the Arizona Department of Child Safety as a defendant. Plaintiffs' counsels' inability to join that or other state agencies leaves Plaintiffs in a potentially problematic position because of the important role that state agencies and courts play in the Arizona Plaintiffs' child-welfare and licensing proceedings. Even if the Court ordered the Guidelines to be withdrawn, that would not prevent state courts and state agencies from choosing to find the interpretations offered in the Guidelines persuasive and worth adopting.

[3] While Defendants believe consolidation is appropriate, they are amenable to considering alternatives to consolidation as long as the cases are ultimately on coordinated schedules before the same judge in Arizona.

[4] The convenience of the Arizona forum for parties and witnesses is apparent from the face of Plaintiffs' complaint, and does not require testimonial evidence. *See, inter alia,* Compl. ¶¶ 11-13 (identifying four plaintiffs and guardian ad litem as residents of Arizona); Compl. ¶¶ 20-30 (describing T.W. and his mother as members of the Navajo Nation; alleging that he is in the custody of the Arizona Department of Child Safety; alleging that he is in foster care in Arizona; and alleging facts about ongoing state child-custody proceedings concerning his care); Compl. ¶¶ 31 (describing D.V. as a member of the Pascua Yaqui Tribe in Arizona); Compl. ¶¶ 40-41 (describing Building Arizona Families as headquartered and licensed in Arizona; describing purported requirements of licensure by the State of Arizona).

allegations that the Guidelines and ICWA are interfering with ongoing child-welfare proceedings in Arizona. If Plaintiffs' claims are not dismissed as a matter of law, an evaluation of the claims of the injuries asserted by the Arizona plaintiffs will require delving into these Arizona court proceedings, and involve not only the Arizona plaintiffs but potentially other such witnesses (as representatives of the two Arizona Indian tribes that have members involved in these proceedings) and documents in the possession of Arizona courts and agencies. Along these lines, it is also worth noting that Plaintiffs' complaints about delay, Opp. at 10; 16, ring hollow when the most efficient way to proceed would be to press their arguments concerning ICWA and the Guidelines upon the Arizona state courts overseeing Plaintiffs' child custody proceedings. Those courts remain free to disregard the Guidelines if they find them inconsistent with ICWA,[5] and they remain free to pass on the constitutionality of ICWA as applied to Plaintiffs should counsel in those proceedings press such claims.[6]

Further, Plaintiffs point out that the constitutional claims raised by the individual Arizona plaintiffs "are as-applied to them individually." Opp. at 13. An as-applied challenge is "based on a developed factual record and the application of a statute to a specific person." *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009) (en banc). Although Defendants dispute that the individual Arizona plaintiffs have stated valid claims for relief on

---

[5] State courts routinely consider arguments about the persuasive effect of the BIA Guidelines. For example, in *Navajo Nation v. Arizona Dept. of Economic Sec.*, 284 P.3d 29 (Ariz. Ct. App. 2012), the Arizona appellate court rejected Navajo Nation's argument that an adoptive placement should be reversed because it did not comply with the BIA Guidelines. The court noted that the Guidelines are "non-binding guidance," and upheld the non-ICWA-compliant placement notwithstanding that it was "undisputed that none of the Guidelines' factors for good cause [to deviate from the placement preferences] are present." *Id.* at 35.

[6] State courts have considered (and rejected) constitutional claims similar to Plaintiffs' here. *See, e.g., In re KMO*, 280 P.3d 1203 (Wyo. 2012) (rejecting equal protection challenge to ICWA's standard of proof); *In re A.B.*, 663 N.W. 2d 625, 636 (N.D. 2003) (rejecting equal protection and substantive due process challenge to ICWA).

9

their constitutional claims, if the Court disagrees, the parties may well have to develop this factual record based entirely on events occurring in Arizona, in Arizona state courts, involving Arizona witnesses, and Arizona state agencies. In contrast, beyond evaluation of NCFA's paltry claims of injury, there is no need for factual investigation in Virginia. *Cognitronics*, 83 F. Supp. 2d at 698 ("Clearly the connections between this district and the case in issue are minimal, and plaintiff's additional legal and equitable arguments in favor of retaining venue in this district are likewise insufficient to overcome the marked lack of any significant link between this district and the operative facts and witnesses to this controversy."). Arizona is a far more convenient forum for the factual development that may be required in this case.

### III. The Interests of Justice Weigh Strongly in Favor of Transfer.

Plaintiffs do not effectively dispute that this case overlaps substantially with the action pending in Arizona, and that such circumstances are precisely those that § 1404(a) is designed to address. *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960); *see also* Transfer Mem. (ECF No. 29) at 9. As detailed in Defendants' opening memorandum, both this action and the Arizona action challenge the legality of the Guidelines and ICWA itself on very similar, if not identical grounds. As just one illustration of the identicality of the legal issues at play in the two cases, other than plaintiff-specific justiciability arguments (*e.g.*, standing), Defendants' threshold defenses to this action are equally applicable to the Arizona action and are likely to be considered by that Court.[7] This degree of overlap, without some coordination, is not only wasteful; it generates a real risk that the federal government, the state courts and agencies that

---

[7] Defendants have previously indicated that they would file a motion to dismiss on their response date. However, given the Court's August 11, 2015 Order (ECF No. 41) finding "that it would be an inefficient use of judicial resources for the Court to proceed with the merits of this action before adjudicating Defendants' Motion to Transfer," Defendants will defer any motion to dismiss until after the transfer motion is ruled upon.

apply ICWA every day in child-welfare proceedings, and the Indian children, parents, and tribes who benefit from ICWA will be subject to confusing and potentially conflicting judgments from the federal courts. There is no reason to perpetuate the inefficiencies of these claims proceeding in two different forums.

Plaintiffs' "interests of justice" argument leans heavily on their assertion that the Court can only consider the situation that existed when the suit was instituted. Opp. at 10-11. But § 1404(a) contains no such limitation, and instead grants courts wide discretion to transfer whenever it serves the interest of justice or the convenience of parties and witnesses. Plaintiffs cite *Hoffman v. Blaski*, 363 U.S. 335 (1960), in support of their argument, but that case stands only for the proposition that Section 1404's language limiting transfer to a forum where "it might have been brought" requires a court to look at venue and personal jurisdiction at the time of filing. *Id.* at 343-44. There is no dispute that, for purposes of venue and personal jurisdiction, this action "might have been brought" in Arizona. Thus, transfer here would fully comply with *Hoffman*. *In re EMC Corp.*, 501 Fed. Appx. 973 (Fed. Cir. 2013) is also readily distinguishable, as it relied solely on the same over-reading of *Hoffman* that Plaintiffs urge here. Under any circumstances, Defendant's counsel has identified no case outside of the Eastern District of Texas that recites this standard, and it is not the rule in this Circuit. *Cf. Heinz Kettler*, 750 F. Supp. 2d at 663, 667 (considering interests of Virginia plaintiff who did not obtain interest in the action until after the filing of the initial complaint to deny transfer motion).

Plaintiffs also greatly overstate the weight given to the "first-filed" forum, as courts still must weigh the § 1404(a) factors in considering a motion to transfer. *See George Mason University Foundation, Inc. v. Morris*, No. 3:11-CV-848, 2013 WL 6449109, at *5 (E.D. Va. Dec. 9, 2013) ("[U]pon 'the showing of balance of convenience in favor of the second action,' a

court may in its discretion depart from the first-to-file rule." (citing *Ellicott Mach. Corp. v. Modern Welding Co., Inc.*, 502 F.2d 178, 180 (4th Cir. 1974)). The "Fourth Circuit has no unyielding 'first-to-file' rule" and application of the rule is discretionary, not mandatory. *U.S. Airways, Inc. v. U.S. Airline Pilots Ass'n*, No. 3:11-CV-371, 2011 WL 3627698 (W.D.N.C. Aug. 17, 2011) (citations and internal quotations omitted). And because "the policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources" "exceptions to the rule are common when justice or expediency requires." *Samsung Electronics Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 724 (E.D. Va. 2005) (internal quotation and citation omitted).

Plaintiffs rely on *Affinity Memory & Micro, Inc.*, 20 F. Supp. 2d at 954, Opp. at 12, and that case made clear that while the "first-to-file" rule is "generally followed, "it is not to be applied mechanically; for example, courts have declined to defer to the first-filed action when little if anything has been done to advance that action for trial." *Affinity Memory*, 20 F. Supp. 2d at 954. That court also noted that "rigid application of the first-to-file rule is unwarranted when the second action was filed only weeks after the first action." *Id.* at 955; *see also Quesenberry v. Volvo Group North America, Inc.*, No. 1:09-CV-00022, 2009 WL 648658, at *3 (W.D. Va. Mar. 10, 2009). "Thus, a thorough transfer analysis is appropriate to determine if the balance of convenience favors transfer." *Affinity Memory*, 20 F. Supp. 2d at 954. Similarly, *Federal Home Loan Mortgage Corp. v. Mortgage Guaranty Insurance Corp.*, No. 1:12-CV-539, 2012 WL 2673151 (E.D. Va. Jul.5, 2012), cited by Plaintiffs, Opp. at 11, also demonstrates that the courts of this District consider the factors identified in 28 U.S.C. § 1404(a) and do not mechanically apply a first-to-file rule. Here, as stated above and in Defendants' opening memorandum, those factors weigh in favor of transfer.

Finally, Plaintiffs argue that this Court should decline transfer because they believe that their claims will be more quickly heard in this Court. This claim is speculative, at best, and under any circumstances is not a significant factor in this Court's Section 1404(a) analysis. *See Cognitronics*, 83 F. Supp. 2d at 699 (docket conditions cannot be the primary reason for retaining a case in this district). As the *Cognitronics* court recognized, "The 'rocket docket' certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner." *Id.* at 699 (citation omitted); *see also Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 744 (E.D. Va. 2003) ("In fact, a thorough analysis of [plaintiff's] arguments convinces this court that docket considerations are the primary reason that [plaintiff] seeks to be heard here. The interests of justice are not served by such blatant forum shopping.").

Both this action and the Arizona action involve primarily issues of law, and there is no reason to think that the cited judicial case statistics – which describe time to ***trial*** – are relevant here. In fact, those statistics suggest that the District of Arizona is an expeditious district. U.S. Courts, *U.S. District Courts—Combined Civil and Criminal Federal Case Management Statistics*, *available at* <http://www.uscourts.gov/file/ 18191/download> (visited Aug. 13, 2015) (providing that median time from filing to disposition in Arizona civil matters in 7.9 months). It is also entirely speculative that the class action issues that may be present in the Arizona case will materially delay resolution of this case if it were transferred.

///

///

## **CONCLUSION**

Based on the convenience to the parties and the compelling need to avoid duplicative litigation and inconsistent judgments, this case should be transferred to the District of Arizona.

                              Respectfully submitted,

                              JOHN C. CRUDEN
                              Assistant Attorney General
                              Environment and Natural Resources Division
                              United States Department of Justice

                              DANA J. BOENTE
                              United States Attorney

By:        /s/_____
                              DENNIS C. BARGHAAN, JR.
                              Assistant U.S. Attorney
                              2100 Jamieson Avenue
                              Alexandria, Virginia 22314
                              Telephone: (703) 299-3891
                              Fax: (703) 299-3983
                              Email: dennis.barghaan@usdoj.gov

| Of Counsel: | |
|---|---|
| REBEKAH KRISPINSKY | STEVEN MISKINIS |
| Assistant Solicitor | Indian Resources Section |
| United States Department of the Interior | CHRISTINE W. ENNIS |
| | Law and Policy Section |
| | Environment and Natural Resources Div. |
| | United States Department of Justice |
| | P.O. Box 44378 |
| | Washington, D.C. 20026 |
| | Email: steven.miskinis@usdoj.gov |
| | Telephone: (202) 305-0262 |
| | Fax: (202) 305-0275 |
| DATE: August 13, 2015 | ATTORNEYS FOR DEFENDANTS |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to the following:

Jacob Stephen Siler
Gibson Dunn & Crutcher LLP (DC)
1050 Connecticut Avenue N.W., Suite 300
Washington, DC 20036
Email: Jsiler@gibsondunn.com

Date: August 13, 2015                               _____/s/_____
                                                            DENNIS C. BARGHAAN, JR.
                                                            Assistant U.S. Attorney
                                                            2100 Jamieson Avenue
                                                            Alexandria, Virginia 22314
                                                            Telephone: (703) 299-3891
                                                            Fax: (703) 299-3983
                                                            Email: dennis.barghaan@usdoj.gov

                                                            ATTORNEYS FOR DEFENDANTS