IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| NATIONAL COUNCIL FOR ADOPTION, | ) | |
| BUILDING ARIZONA FAMILIES on behalf | ) | |
| of itself and its birth-parent clients, birth | ) | |
| parents D.V. and N.L., and baby boy T.W. by | ) | |
| and through his guardian ad litem PHILIP | ) | Case No. 1:15-cv-00675-GBL |
| (JAY) MCCARTHY, JR., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SALLY JEWELL, in her official capacity as | ) | |
| Secretary of the United States Department of | ) | |
| the Interior, KEVIN WASHBURN, in his | ) | |
| official capacity as Assistant Secretary of | ) | |
| Indian Affairs, BUREAU OF INDIAN | ) | |
| AFFAIRS, and the UNITED STATES | ) | |
| DEPARTMENT OF THE INTERIOR, | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the court on Plaintiffs' National Council for Adoption,

Building Arizona Families, on behalf of itself and its birth-parent clients, birth parents D.V. and

J.L., and baby boy T.W. by and through his guardian ad litem Philip (Jay) McCarthy, Jr.'s

("Plaintiffs") Motion for Summary Judgment on the Administrative Procedure Act ("APA")

Claim[1] (Doc. 20). This case concerns Plaintiffs' claim that Defendants violated the notice-and-

comment requirements of the APA by issuing the Guidelines for State Courts and Agencies in

Indian Child Custody Proceedings, 80 Fed. Reg. 10, 146 (Feb. 25, 2015) ("2015 Guidelines").

Defendants argue that the 2015 Guidelines are non-binding, interpretive rules which are not

---

[1] *See* Count I of the Complaint (Doc. 1).

subject to the APA's notice-and-comment requirements. Plaintiffs' urge the Court to vacate the 2015 Guidelines and invalidate the 2015 Guidelines as a matter of law.

The issue before the Court is whether the 2015 Guidelines are invalid because they were issued in violation of the notice-and-comment requirements of the APA.

The Court DENIES Plaintiffs' Motion for Summary Judgment for three reasons. First, this court does not have subject matter jurisdiction over the APA claim because Plaintiffs lack standing to challenge the 2015 Guidelines. Second, the 2015 Guidelines are not a "final agency action" within the meaning of the APA because they do not create legal rights and obligations. Third, the 2015 Guidelines are non-binding interpretive rules and are therefore not subject to APA notice-and-comment procedures.

## I.   BACKGROUND

This case arises from Plaintiffs' contention that Defendants Sally Jewell, in her official capacity as Secretary of the United States Department of the Interior, Kevin Washburn, in his official capacity as Assistant Secretary of Indian Affairs, the Bureau of Indian Affairs, and the Department of the Interior, violated the Administrative Procedure Act ("APA") 5 U.S.C. §§ 551-706. Plaintiffs allege that the Guidelines for State Courts and Agencies in Indian Child Custody Proceedings that were developed by the Bureau of Indian Affairs ("BIA") and issued by the Department of the Interior ("DOI") on February 25, 2015, 80 Fed. Reg. 10,146 (Feb. 25, 2015) are invalid because they were issued in derogation of the notice-and-comment requirements of the APA, 5 U.S.C. § 553.

Plaintiff National Council for Adoption ("NCFA") is a non-profit, national adoption policy organization with its headquarters and principal place of business in Alexandria, Virginia (Doc. 1-5, 10:1-6). Plaintiff Building Arizona Families is a non-profit adoption agency

2

headquartered in, and licensed by, the State of Arizona (Doc. 1-5, 11:1-6). Building Arizona Families is suing on its own behalf, and on behalf of its birth-parent clients who are frustrated by the 2015 Guidelines that seek to implement the Indian Child Welfare Act ("ICWA")'s hierarchy of placement preferences regarding birth-parent client's decisions to place their children, classified as "Indian children," into adoptive homes. *Id.* Plaintiffs D.V. and N.L. are birth parents of a child who is an "Indian child" under ICWA because D.V., the child's father, is an enrolled member of the Pascua Yaqui Tribe located in Arizona and both parents, D.V. and N.L. are residents of Arizona and do not reside on an Indian reservation (Doc. 1-5, 12:1-8). D.V. and N.L. selected an adoptive placement that is not within ICWA's placement preferences. Plaintiff Phillip (Jay) McCarthy, Jr. is a resident of Arizona and is the court-appointed guardian ad litem from baby boy T.W., who is an "Indian Child" pursuant to the ICWA, because he is an enrolled member of the Navajo Nation (Doc. 1-6, 13:1-7). T.W.'s foster parents are not a preferred placement under the ICWA or the 2015 Guidelines. *Id.*

Defendant Sally Jewell is the Secretary of the United States Department of the Interior (Doc. 1-6, 14:1-2). Defendant Kevin Washburn is the Assistant Secretary for Indian Affairs at the Bureau of Indian Affairs within the United States Department of the Interior (Doc. 1-6, 15:1-3). Defendant Bureau of Indian Affairs is a federal agency within the Department of the Interior. (1-6, 16:1-2). Defendant Department of the Interior is a federal executive department of the United States (Doc. 1-6, 17:1-2).

Congress enacted the Indian Child Welfare Act ("ICWA") to address "'the consequences to Indian Children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.'" *Adoptive Couple v.*

3

*Baby Girl*, 133 S. Ct. 2552, 2557 (2013) (quoting *Miss Band of Choctaw Indians v. Holyfield*,

490 U.S. 30, 32 (1989)).  The ICWA applies to "child custody proceedings" (defined as foster-

care placements, terminations of parental rights, and preadoptive and adoptive placements)

involving an "Indian child," which is defined as "unmarried persons who is under age 18 and is

either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe."  25

U.S.C. §§ 1903(1), (4).  On November 29, 1979, the Bureau of Indian Affairs ("BIA") issued

guidelines representing the BIA's interpretation of ICWA and providing procedures designed to

"help assure that rights guaranteed by the Act are protected when state courts decide Indian child

custody matters."  44 Fed. Reg. 67, 584 (1979).  The BIA made it clear in the introduction of the

guidelines that they were meant to be simply guidelines, and that they were not binding and were

distinguishable from any binding agency regulations.  *Id.*  The guidelines stated, "When . . . the

Department writes rules or guidelines advising some other agency how it should carry out

responsibilities explicitly assigned to it by congress, those rules or guidelines are not, by

themselves, binding."  *Id.*

On February 25, 2015, the BIA updated its guidelines, but did not include the same

language in the 1979 introduction which stated that the guidelines were not binding.  Instead, the

BIA explained that the 2015 Guidelines "promote compliance with ICWA's stated goals and

provisions by providing a framework for State courts and child welfare agencies to follow."  80

Fed. Reg. 10, 146-147.  In preparing the updated version, the BIA invited comments from

federally recognized Indian tribes, state-court representatives, and organizations concerned with

tribal children, child welfare, and adoption.  *Id.*

Soon after issuing the 2015 Guidelines, the BIA initiated a notice-and-comment

rulemaking on March 20, 2015 to promulgate formal regulations to implement the ICWA (Doc.

48, 7). The BIA stated that the formal rulemaking was being proposed for the express purpose of issuing regulations that would "incorporate many of the changes made to the recently revised guidelines . . . establishing the Department's interpretation of the ICWA as a binding interpretation to ensure consistency in implementation of ICWA across all states." Proposed Rule: Regulations for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 14,880, 14,881 (Mar. 20, 2015); (Doc. 48, 2). Plaintiffs, National Council for Adoption and Philip (Jay) McCarthy, Jr., submitted comments on the proposed regulations (Doc. 48, 20). Nonetheless, Plaintiffs allege that the 2015 Guidelines are legislative guidelines which make them binding and that as binding "legislative rules," the BIA should have followed the APA's note-and-comment procedures before issuing them.

On May 27, 2015, Plaintiffs' filed a Complaint seeking a judgment that the 2015 Guidelines violate the APA and the United States Constitution, an order setting aside the 2015 Guidelines, and injunctive relief ordering Defendants to withdraw the 2015 Guidelines (Doc. 1-6, 9:1-5). Plaintiffs also sought a declaratory judgment that the child custody provisions of the ICWA, 25 U.S.C. §§ 1911-1923, violate the United States Constitution and accordingly cannot be applied to them. *Id.* On July 30, 2015 Plaintiffs filed a Motion for Summary Judgment on APA Claim and a Memorandum in Support of Plaintiffs' Motion for Summary Judgment (Doc. 20-21). On September 1, 2015, Defendants filed Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. 48.). On September 14, 2015, Plaintiffs filed its Reply in Support of Plaintiff National Council for Adoption's Motion for Summary Judgment on APA Claim (Doc. 54.). Plaintiff's Motion for Summary Judgment is now properly before the Court.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Boitnott v. Corning, Inc.*, 669 F.3d 172, 175 (4th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (quoting *Anderson*, 477 U.S. at 247–48).

A "material fact" is a fact that might affect the outcome of a party's case. *Anderson*, 477 U.S. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its

own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## II.   ANALYSIS

This Court DENIES Plaintiffs' Motion for Partial Summary Judgment because (1) Plaintiffs lack standing to challenge the 2015 Guidelines, (2) the 2015 Guidelines are not a "final agency action" within the meaning of the APA because they do not create legal rights and obligations, and (3) the 2015 Guidelines are non-binding interpretive rules not subject to APA notice-and-comment procedures.

### A. Plaintiffs lack standing to challenge the 2015 Guidelines

The Court DENIES Plaintiffs' Motion for Summary Judgment because Plantiffs fail to demonstrate (1) a cognizable injury in fact, and (2) a causal connection between the claimed injury and Defendants' issuance of the 2015 Guidelines. Absent a showing of standing by Plaintiffs, this Court lacks subject matter jurisdiction over Plaintiffs' claim. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990).

Standing exists where (1) Plaintiffs have suffered an injury in fact, (2) there is a causal connection between the injury and the condition complained of, and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992); *see also South Carolina Coastal Conservation League v. U.S. Army Corps of Engineers*, 789 F.3d 475, 482 (4th Cir. 2015). Plaintiffs argue that National Council for Adoption has both individual and associational standing because Plaintiffs have been concretely harmed by the 2015 Guidelines. (Doc. 54, 11). However, Plaintiffs fail to demonstrate at least two necessary requirements for standing.

First, Plaintiffs do not demonstrate a cognizable injury in fact. To establish injury in fact, Plaintiffs must show that their "expenditures perceptibly impair the organization's ability to advance its mission." *Equal Rights Ctr. v. Equity Residential*, 798 F. Supp. 2d 707, 720 (D. Md. 2011). Plaintiffs assert that National Council for Adoption and its member adoption agencies have been "forced to divert a significant portion of its limited resources" to educate its members about the 2015 Guidelines and that diverting significant resources toward educating its members and helping members comply with the 2015 Guidelines are contrary to Plaintiffs mission of securing safe, permanent homes for children who need them (Doc. 21, 8); (Doc. 54, 2). Despite Plaintiffs' claims, the 2015 Guidelines impose no duty on Plaintiffs to divert resources to comply with the 2015 Guidelines. Plaintiffs have, instead, voluntarily abided by the 2015 Guidelines. The voluntary decision by a private adoption agency to abide by the 2015 Guidelines does not give rise to injury (Doc. 48, 16) (citing to *Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997). Therefore, the voluntary expenditures by Plaintiffs to educate its members did not impair the organization's ability to advance its mission. *See Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012) ("educating members, responding to member inquiries, or undertaking litigation in response to legislation" are "merely abstract concerns" not suitable for adjudication).

Plaintiffs even acknowledge they were not bound by the 2015 Guidelines when Plaintiffs submitted comments as part of Defendants' rulemaking to make parts of the 2015 Guidelines legislative rules, a process initiated soon after the BIA issued the 2015 Guidelines (Doc. 48, 17). After issuing the 2015 Guidelines, Defendants followed the APA's notice-and-comment rulemaking procedure to "incorporate many of the changes made to the recently revised guidelines . . . [with the purpose of] establishing the Department's interpretation of ICWA as binding interpretation to ensure consistency in implementation of ICWA across all States."

Proposed Rule: Regulations for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 14,880, 14,881 (Mar. 20, 2015). Plaintiffs commented on Defendants proposed rules and stated that they "are deeply concerned that the BIA is attempting to elevate these 2015 Guidelines to federal regulatory status."[2] This comment evinces an understanding that the 2015 Guidelines are not binding regulations. Therefore, Plaintiffs cannot assert injury in fact for voluntary compliance with guidelines they acknowledged had no binding effect and no enforcement mechanism.

Second, Plaintiffs have not established a causal connection between injury and issuance of the 2015 Guidelines. The causation requirement is "designed to ensure that the injury complained of is not the result of the independent action of some third party not before the court." *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 324 (4th Cir. 2002). Plaintiffs cannot demonstrate that there is a direct link between Defendants issuing the 2015 Guidelines and Plaintiffs being injured by expending resources as a result of the 2015 Guidelines. This is because the interpretations contained in the 2015 Guidelines can only be implemented by the independent action of a third-party: state courts. *See Marshall v. Meadows*, 105 F.3d 904, 906 (4th Cir. 1997) (stating that there is no standing when a plaintiff's alleged injury was caused by the decision of a third-party). The 2015 Guidelines are merely interpretive in nature and impose no obligation unless and until a state court requires compliance with their provisions (Doc. 48, 19). It is not enough for an agency to encourage a third party to act in a particular way if the agency is not actually directing the party or mandating a specific result. *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 42-43 (1976). Therefore, Plaintiffs have

---

[2] National Council for Adoption et al., Comment on the Bureau of Indian Affairs (BIA) Proposed Rule: Regulations for State Courts and Agencies in Indian Child Custody Proceedings (May 22, 2015), http://www.regulations.gov/#!documentDetail;D=BIA-2015-0001-0514.

failed to establish a causal connection between Defendants issuing the 2015 Guidelines and Plaintiffs being injured by the issuance because the 2015 Guidelines do not mandate state court compliance.

Accordingly, Plaintiffs cannot establish standing because (1) Plaintiffs have not demonstrated that they suffered a cognizable injury in fact, and (2) Plaintiffs have not established a causal connection between the injury and the Defendants' actions. For these reasons, the Court DENIES Plaintiffs' Motion for Summary Judgment.

### B. The 2015 Guidelines are not a "final agency action" within the meaning of the APA

The Court also DENIES Plaintiffs' Motion for Summary Judgment because the 2015 Guidelines do not constitute "final agency action" within the meaning of the APA.

The APA authorizes judicial review of an agency action "only when a statute makes the action reviewable or the action was a 'final agency action for which there is no other adequate remedy.'" *Wollman v. Geren*, 603 F. Supp. 2d 879, 883 (E.D. Va. 2009) (quoting 5 U.S.C. § 704). If the agency action at issue is not "final" under the APA, a court lacks subject matter jurisdiction over the issue and dismissal is proper. *Id.* at 883; *see also Invention Submission Corp. v. Rogan*, 357 F.3d 452, 460 (4th Cir. 2004). The burden to prove agency action was "final" rests with the Plaintiffs. *Shipbuilders Council of Am., Inc. v. DHS*, 481 F. Supp. 2d 550, 555 (E.D. Va. 2007). The Supreme Court and the Fourth Circuit have recognized that in order for agency action to be final it must (1) mark "the consummation of the agency's decision making process," and (2) determine rights, obligations, or legal consequences. *Bennett v. Spear*, 520 U.S. 154, 178 (1997); *COMSAT Corp. v. National Sci. Found.*, 190 F.3d 269, 274 (4th Cir. 1999). Moreover, the Fourth Circuit has held that "agency action which carries no 'direct or

appreciable legal consequences' is not reviewable under the APA." *Flue-Cured Tobacco Coop. Stabilization Corp. v. U.S.E.P.A.*, 313 F.3D 852, 859 (4th Cir. 2002).

Here, Plaintiffs have not carried their burden of demonstrating that the 2015 Guidelines create rights, obligations, or legal consequences. Plaintiffs assert that the mandatory language contained in the guidelines, such as Defendants use of the word "must" 101 times, creates an obligation for state courts and agencies to comply with the 2015 Guidelines (Doc. 21, 12). This argument is unpersuasive because nothing in the 2015 Guidelines creates legal consequences for state courts, state agencies, or any other party that chooses not to adhere to the 2015 Guidelines. State courts accorded the 1979 Guidelines with some deference but did not interpret them as binding. *See e.g., People ex re. M.H.*, 691 N.W.2d 622, 625 (D.C. 2005) (noting that the "guidelines do not have binding legislative effect"); *People ex rel. S.R.M.*, 153 P.3d 438 (Colo. Ct. App. 2006) (observing that the 1979 guidelines are persuasive but not binding authority). Similarly, state courts applying the 2015 Guidelines have held that they are entitled to some deference but have rejected the notion that the guidelines are binding authority. *See Ogala Sioux Tribe v. Van Hunnik*, No. CIV. 13-5020-JLV, 2015 WL 1466067, at *14 (D.S.D. Mar. 30, 2015 ("The DOI Guidelines are not binding on the court but are an administrative interpretation of the ICWA entitled to great weight."); *In the Matter of M.K.T.*, Case No. 113, 110, 6-9 (Okla. Civ. App. May 1, 2015) (considering but rejecting the 2015 Guidelines recommendations because "[t]he BIA Guidelines are not binding and are instructive only"); *State ex rel. Children, Youth & Families Dep't v. Casey J.*, No. 33,409, 2015 WL 3879548, at *4 (N.M. Ct. App. June 22, 2015) (choosing to apply *both* the 1979 Guidelines and the 2015 Guidelines to reach its position concerning good cause to deviate from the ICWA's placement preferences); *Payton S. v. State*, 349 162, 173 (Alaska 2015) (noting the 2015 update of the 1979 Guidelines and stating that the

court has used them for "guidance in determining whether a proposed witness meets the heightened ICWA expert requirements").

Moreover, mere agency influence over third parties is not sufficient to create rights, obligations, or legal consequences for purposes of judicial review under the APA. *See Flue Cured-Tobacco Coop. Stabilization Corp. v. U.S.E.P.A.*, 313 F.3D 852, 860 (4th Cir. 2002) ("Even when agency action significantly impacts the choices available to the final decisionmaker, this distinction does not transform the challenged action into reviewable agency action under the APA"). The court in *Flue-Cured Tobacco* explained:

> [A]s a practical matter and of considerable importance, if we were to adopt the position that agency actions producing only pressures on third parties were reviewable under the APA, then almost any agency policy or publication issued by the government would be subject to judicial review. We do not think that Congress intended to create private rights of actions to challenge the inevitable objectionable impressions created whenever controversial research by a federal agency is published. Such policy statements are properly challenged through the political process and not the courts.

313 F.3d at 861. Here, the 2015 Guidelines serve as advisory guidelines to state courts, and even if they deemed persuasive and followed by certain courts, the state courts remain the final decision makers with regard to application of the ICWA because the 2015 Guidelines are not binding rules that compel those courts' decisions. Furthermore, voluntary compliance with the 2015 Guidelines does not make them a reviewable "final agency action." *See Ctr. for Auto Safety v. N.H.T.S.A.*, 452 F.3d 798, 811 (D.C. Cir. 2006) (holding that "de facto compliance is not enough to establish that the guidelines have legal consequences").

For these reasons, Plaintiff has failed to demonstrate that the 2015 Guidelines are a "final agency action" within the meaning of the APA and Plaintiffs' Motion for Summary Judgment on these grounds is DENIED.

### C. The 2015 Guidelines are non-binding interpretive rules not subject to APA notice-and-comment procedures

This Court DENIES Plaintiffs' Motion for Summary Judgment because the 2015 Guidelines are non-binding interpretive rules not subject to APA notice-and-comment procedures. Plaintiffs argue that the 2015 Guidelines are, at minimum, the functional equivalent of binding legislative rules that are subject to the APA's notice-and-comment requirement. Defendants counter that for the same reasons the 2015 Guidelines are not a "final agency action"—because they do not impose legal obligations—the guidelines are "interpretive rules" or statements of policy that are not subject to APA notice-and-comment procedures.

Under Title 5, Section 553 of the U.S. Code, public notice of rulemaking must be published in the Federal Register and there must be an opportunity for the general public to comment on the proposed rule. 5 U.S.C. § 553(b-(c). However, the provision exempts "interpretive rules" and "general statements of policy." *Id.* § 553 (b)(A). Interpretive rules "simply state what the administrative agency thinks a statute means, and only remind affected parties of the existing duties." *Id.* at 1340-41. Legislative rules, in contrast, "create new rights and have the force and effect of law." *Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1340 (4th Cir. 1995); *see also Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Comm'n*, 874 F.2d 205, 207 (4th Cir. 1989).

In determining whether rules are legislative or interpretive the Fourth Circuit considers several factors, each of which militate toward the conclusion that the 2015 Guidelines are not legislative rules.

First, the Fourth Circuit has made clear that an agency's "own conduct . . . is highly relevant." *North Carolina Growers' Ass'n, Inc. v. United Farm Workers*, 702 F.3d 755, 765 (4th Cir. 2012). An agency's attempt to comply with the APA's notice-and-comment requirement "support[s] the conclusion that those procedures were applicable") (internal quotations omitted). *North Carolina Growers' Ass'n, Inc.*, 702 F.3d at 765. In the present case, Defendants' conduct tends to demonstrate that the 2015 Guidelines are non-binding interpretive rules. Defendants did not initiate the notice-and-comment process to make the 2015 Guidelines themselves binding, nor did Defendants seek to enforce provisions of the 2015 Guidelines (Doc. 48, 26). However, less than one month after issuing the 2015 Guidelines, Defendants initiated a notice-and-comment procedure to transform parts of the 2015 Guidelines into legislative rules, which would be unnecessary if Defendants intended the 2015 Guidelines themselves to have binding or legislative effect (Doc. 48, 26).

The Fourth Circuit also looks to how the agency itself characterizes the document at issue. *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 105-106 (4th Cir. 2011); *see also West Virginia v. Thompson*, 475 F.3d 204, 211 n.2 (4th Cir. 2007). Defendants have not characterized the 2015 Guidelines in a way that would indicate they are binding legislative rules. Rather, Defendants' characterization of the 2015 Guidelines suggests they were not meant to be legislative, but rather, interpretive rules. The 2015 Guidelines have the stated purpose of serving to "promote compliance with ICWA's stated goals and provisions by providing a framework for State courts and child welfare agencies to follow." 80 Fed. Reg. 10, 146-74. The Fourth Circuit has recognized that an agency action is not legislative where it made clear that it is not meant to be legislative. *See West Virginia v. Thompson*, 475 F.3d 204, 211 n.2 (4th Cir. 2007) (manual provision not legislative where it made clear "that it does not bind the states to any mandatory

14

requirements beyond those in the Medicaid statute"). Plaintiffs argue that Defendants' usage of the word "must" 101 times and "may not" ten times demonstrates that Defendants characterized the 2015 Guidelines as having a binding effect. However, mandatory language does not transform a set of interpretive rules into compulsory legislative rules. *See Am. Mining Congress v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1111 (D.C. Cir. 1993) ("Nor is there much explanatory power in any distinction that looks to the use of mandatory as opposed to permissive language."). Mandatory language is not dispositive of this issue because even interpretive rules can use mandatory language when interpreting part of a statutory command. *Id.* Here, the use of mandatory language does not dictate whether the 2015 Guidelines are interpretive or legislative rules, because that language is used in the context of a document that is itself presented merely as "guidance" to "promote compliance" with the ICWA. 80 Fed. Reg. 10,146.

Additionally, the Fourth Circuit looks to the actual or intended effect of the rule. *Chen Zou Chai v. Carroll*, 48 F.3d 1331, 1341 ("A rule is a general statement of policy if it does not establish a binding norm and leaves agency officials free to exercise their discretion."); *see also Jerri's Ceramic Arts, Inc.*, 874 F.2d at 208 (rule was legislative where it "has the clear intent . . . of providing the Commission with power to enforce violations of a new rule"). The 2015 Guidelines do not have an actual or intended effect of being legislative rules and state courts are free to exercise their discretion and depart from interpretations contained in the 2015 Guidelines. As mentioned previously, Defendants did not attempt to comply with the APA's notice-and-comment procedures when issuing the 2015 Guidelines, nor have the Defendants attempted to compel agencies to comply with the 2015 Guidelines. *Jerri's Ceramic Arts, Inc.*, 874 F.2d at 208 (rule was legislative where it "has the clear intent . . . of providing the Commission with power to enforce violations of a new rule"). Here, Defendants actions allowed state courts and

15

agencies to adopt their own interpretation of ICWA and simply issued the 2015 Guidelines as non-binding "guidance." 80 Fed. Reg. at 10, 146 (stating that the 2015 Guidelines "provide guidance to State courts and child welfare agencies implementing [ICWA]."); *see M.K.T.*, Case No. 113, 110, at 7-8 (rejecting the 2015 Guidelines interpretation of "good cause").

Finally, the Fourth Circuit takes into consideration an agency's change of a "long-standing position" in determining whether guidelines are binding legislative rules. *Jerri's Ceramic Arts*, 874 F.2d at 208. Plaintiffs argue that the 2015 Guidelines' mark departure from prior policy that indicates a change from non-binding to binding guidelines; Defendants' counter that the changes to the Guidelines in the 2015 update are merely the result of the BIA's intention to take a position on interpretive disagreements that have arisen among state courts in the many years that have passed since enactment of ICWA and issuance of the 1979 Guidelines. Regardless, neither the Fourth Circuit nor the APA require notice and comment before an agency can update or change its interpretation of a statute. In evaluating a change of policy, the court's inquiry must focus on whether the change was one that created new legal obligations on state courts or agencies and therefore do require notice-and-comment procedures. Here, despite any changes from the 1979 Guidelines, the 2015 Guidelines do not create new legal rights, duties, or obligations binding state courts and thus, they are not legislative rules.

Analysis of these factors supports the conclusion that the 2015 Guidelines are not legislative rules but rather that they are non-binding interpretive rules not subject to APA notice-and-comment procedures. Accordingly, Plaintiffs' claim that the 2015 Guidelines have been issued in derogation of the APA's notice-and-comment procedure fails, and Plaintiffs' Motion for Summary Judgment is DENIED.

### III.   CONCLUSION

The Court denies Plaintiffs' Motion for Summary Judgment on the APA claim for three reasons.   First, Plaintiffs lack standing to challenge the 2015 Guidelines because they cannot demonstrate the requisite injury in fact or causation elements.   Second, the 2015 Guidelines are not a "final agency action" within the meaning of the APA because they do not create legal rights and obligations.   Finally, the 2015 Guidelines are non-binding interpretive rules not subject to APA notice-and-comment procedures.   For the foregoing reasons, it is hereby

**ORDERED** that Plaintiffs' Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

ENTERED this _20th_ day of October, 2015.

Alexandria, Virginia
10 / ___ / 2015

/s/
Gerald Bruce Lee
United States District Judge

17