# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| NATIONAL COUNCIL FOR ADOPTION, BUILDING ARIZONA FAMILIES, on behalf of itself and D.V. and N.L., and T.W. by and through his guardian ad litem, PHILIP (JAY) MCCARTHY, JR.,<br><br>              Plaintiffs,<br><br>       v.<br><br>SALLY JEWELL, in her official capacity as Secretary of the United States Department of the Interior, KEVIN WASHBURN, in his official capacity as Assistant Secretary of Indian Affairs, BUREAU OF INDIAN AFFAIRS, and the UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:15cv675<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FOR JUDGMENT ON THE PLEADINGS

## TABLE OF CONTENTS

**INTRODUCTION** ....................................................................................................1

**ARGUMENT** ...........................................................................................................2

**I.   BAF Has Already Lost Its Challenge to the Guidelines and the Complaint Must Be Dismissed** ...........................................................................................................2

   A.   Plaintiffs Lack Standing to Challenge the Guidelines ............................................2

   B.   BAF Cannot Challenge the Guidelines Under the Administrative Procedure Act ...........4

   C.   BAF's Other Claims Must Be Dismissed Because the Guidelines Are Non-Binding.......5

**II.   BAF Cannot Otherwise Demonstrate Subject-Matter Jurisdiction to Challenge the Guidelines, and Its Claims Fail as a Matter of Law** .................................................6

   A.   BAF Does Not Itself Have Standing and Cannot Assert the Interests of Birth Parents.....6

   B.   BAF Does Not Deny that Its Claims Are Unripe Because the Underlying Action is Not Final or Independent of Future Uncertainties ..................................................11

   C.   BAF's Opposition Does Not Salvage Its Substantive Claims, Which Fail to State Any Grounds for Relief and Must be Dismissed ...................................................12

      1.   BAF Has Not Demonstrated that the Guidelines are Final Agency Action for Jurisdiction Under the APA or That They Are Contrary to Law ..............................12

      2.   BAF Cites No Authority to Support Its Equal Protection, Due Process, or Indian Commerce Clause Claims .............................................................13

      3.   The Guidelines Do Not Commandeer State Entities ........................................16

      4.   BAF Has Failed to Plead a Bivens Action ...................................................19

**CONCLUSION** ......................................................................................................20

## INTRODUCTION

As a result of substantial changes since Defendants filed their Motion to Dismiss for Lack of Subject-Matter Jurisdiction and For Judgment on the Pleadings, ECF No. 52 ("Motion"), there are no longer any justiciable claims before the Court.  On October 16, 2015, Plaintiffs voluntarily dismissed the claims of all plaintiffs except Building Arizona Families ("BAF") and National Council for Adoption ("NCFA").  ECF No. 65.  On the same day, NCFA failed to oppose Defendant's Motion, thereby waiving any defense of its claims.  *See* BAF's Opp. to Defs. Mot., ECF No. 64 ("Opposition").  Finally, and most significantly, on October 20, 2015, the Court issued its Memorandum Opinion and Order denying Plaintiffs' partial summary judgment motion. ECF No. 66 ("Memorandum Opinion").  The Court has, therefore, already considered and decided that no Plaintiff has standing to challenge the Guidelines, that the Guidelines do not create legal rights and obligations, and that the Guidelines are unreviewable under the Administrative Procedure Act ("APA") – issues that dispose of the remainder of BAF's[1] case.

In consequence, Plaintiffs' Count I must be dismissed because this Court found no subject-matter jurisdiction.  Plaintiffs have stipulated to the dismissal of Counts II, III, and IV. Only Counts V through VIII remain, but without standing to challenge the Guidelines, these too must be dismissed.  Counts I, V, VI, and VIII exclusively target the Guidelines, and Count VII also challenges the Guidelines.  *See, e.g.*, *DietGoal Innovations LLC v. Wegmans Food Mkts., Inc.*, 993 F. Supp. 2d 594, 600 (E.D. Va. 2013) ("[Law of the case] doctrine 'restricts a court to legal decisions it has made on the same issues in the same case.'") (quoting *MacDonald v. Moose*, 710 F.3d 154, 161 n.10 (4th Cir. 2013)); *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 807

---

[1] The Opposition is brought only on behalf of BAF and Defendants therefore address their reply to BAF alone.  Defendants, however, assert these arguments with respect to any other Plaintiff that this Court may determine still maintains claims in this lawsuit.

(E.D. Va. 2007).  *See also Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988) (law of the case doctrine should be followed when applicable unless "the prior decision was clearly erroneous and would work manifest injustice").  The only claim that arguably persists is BAF's request in Count VII for declaratory judgment that the Indian Child Welfare Act ("ICWA") violates the Indian Commerce Clause, but this, too, is nothing more than a backdoor effort to invalidate the Guidelines and does not stand as an independent cause of action.

Even if BAF's claims were not precluded by the Memorandum Opinion, however, they would fail in their own right.  BAF does not have standing, either for itself or to assert the interests of unspecified birth parents, nor has it alleged any basis for this Court to conclude that its claims are ripe.  If adoption proceedings are underway, then the Court should abstain from hearing the present suit or dismiss the declaratory relief as contrary to the Anti-Injunction Act. BAF cannot demonstrate that "legal consequences flow" from the Guidelines so as to render them reviewable because it concedes that Defendants do not enforce the Guidelines, and makes no argument that Defendants otherwise treat them as controlling.  Nor does BAF cite any binding authority for the propositions that the Guidelines are race-based, that birth parents have a fundamental right to dictate the adoptive placement of their child, that ICWA exceeds the Indian Commerce Clause, or that non-binding Guidelines may commandeer state entities.  For these reasons, and because they have not alleged a basis for relief under *Bivens*, Plaintiffs' claims fail for lack of subject-matter jurisdiction and as a matter of law and must be dismissed.

## ARGUMENT

### I.  BAF Has Already Lost Its Challenge to the Guidelines and the Complaint Must Be Dismissed

A.  <u>Plaintiffs Lack Standing to Challenge the Guidelines</u>

2

The Court can dispose of the remaining counts of the Complaint on the basis of its earlier determination that "Plaintiffs lack standing to challenge the 2015 Guidelines." Mem. Op. at 7. The Court has found that no Plaintiff, including BAF – the only party Plaintiffs now allege has standing – can establish a causal connection between any injury they suffer and the issuance of the Guidelines because the Guidelines "can only be implemented by the independent action of . . . state courts." *See id*. at 1, 9.[2]  Causation is an essential element of constitutional standing and, without it, BAF cannot maintain claims challenging the Guidelines.  Therefore, Counts I, V, VI, and VIII, which exclusively target the Guidelines, must be dismissed, along with Count VII's request for declaratory judgment that the Guidelines are unconstitutional.

Count VII also alleges that ICWA exceeds Congress's authority under the Indian Commerce Clause, but its clear intent is to invalidate the Guidelines.  BAF's Opposition addresses the Indian Commerce Clause (and its other constitutional arguments) solely in the context of its arguments that the Guidelines are improper, and does not assert that it is challenging the statute itself.  *See* Opp. at 12, 15, 19, 20 (relying on constitutional claims only to the extent that they prove the Guidelines "unlawful" under 5 U.S.C. § 706).  Because BAF asserts no valid claim against the statute, Count VII's declaratory judgment claim must be dismissed in its entirety.[3]

---

[2] To the extent that BAF attempts to argue in its Opposition that it suffers injury because the Guidelines encourage state courts to violate the constitutional rights of birth parents that BAF purports to represent, Opp. at 26-28, that argument is also foreclosed by the Court's decision. The Court has already determined that "[i]t is not enough for an agency to encourage a third party to act in a particular way if the agency is not actually directing the party or mandating a specific result." Mem. Op. at 9 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42-43 (1976)).

[3] BAF's Opposition does not challenge the statute on equal protection and due process grounds and so has waived any defense of these claims in Count VII.  Moreover, Count VII should be dismissed because it is not properly alleged as a separate Count; the Declaratory Judgment Act authorizes only a form of relief, it does not provide a cause of action.

Finally, even if BAF still had a viable allegation that the Guidelines could cause injury, the Court has already concluded that the injury BAF alleged is insufficient to support standing. BAF alleges that it has expended resources to comply with the Guidelines, and that compliance interferes with its ability to "plac[e] children into loving adoptive homes."  Compl. ¶ 42; *see also* Opp. at 5.[4]  Even taking BAF's allegations at face value as they repeatedly assert that the Court must, it does not alter the fact that these expenditures are not mandated by the Guidelines:

> Despite Plaintiffs' claims, the 2015 Guidelines impose no duty on Plaintiffs to divert resources to comply . . . . Plaintiffs have, instead, voluntarily abided by the 2015 Guidelines.  The voluntary decision by a private adoption agency to abide by the 2015 Guidelines does not give rise to injury.

Mem. Op. at 8 (evaluating claims that the Guidelines forced adoption agencies to divert resources to comply, and that compliance was contrary to their mission of securing safe, permanent homes for children).  Without direct injury, BAF does not have standing to pursue *any* claims, including the constitutional challenge to ICWA in Count VII, either on its own behalf, or on behalf of the unspecified birth parents that it purports to represent.  *See infra* Section II.A.  As such, the Complaint must be dismissed.

   B.   BAF Cannot Challenge the Guidelines Under the Administrative Procedure Act

   This Court's Memorandum Opinion answered decisively the question of its subject-matter jurisdiction to hear Count I and whether BAF stated a claim for relief.  The Court not only concluded that the Guidelines were not subject to notice-and-comment requirements – one theory upon which Plaintiffs' APA claim was predicated – but also held that the Guidelines did not determine rights, obligations, or legal consequences.  Mem. Op. at 11, 13.  As such, the

---

[4] BAF attempts in the Opposition to recast its "mission" as assisting birth parents in directing the adoptive placement of their children, but this is not alleged in the Complaint, and is thus irrelevant for purposes of the instant motion.

Guidelines are not "final agency action" subject to review under the APA under any theory, *see Versata Dev. Group, Inc. v. Lee*, 959 F. Supp. 2d 912, 925-26 (E.D. Va. 2013) (quoting 5 U.S.C. § 704), *aff'd*, 793 F.3d 1352 (Fed. Cir. 2015), and Count I must be dismissed for lack of subject-matter jurisdiction and because Plaintiffs failed to state a claim.  BAF's entire Opposition on this point is devoted to the unobjectionable proposition that interpretive rules are reviewable (if they are a "final agency action"), Opp. at 2-3, and to relitigating the question of whether the Guidelines effect legal consequences, *id*. at 2-5; both points are addressed by the Court's conclusion on summary judgment that the Guidelines are *not* final because they do *not* have legal consequences. *See* Mem. Op. at 11 ("[N]othing in the 2015 Guidelines creates legal consequences for state courts, state agencies, or any other party that chooses not to adhere to the 2015 Guidelines.") This includes BAF's argument that the Guidelines are an unreasonable interpretation of ICWA, *see* Opp. at 12-15, which is simply an alternate theory for Plaintiffs' APA claim.  *See* 5 U.S.C. § 706(1)(A); Compl. ¶ 178.

C.     BAF's Other Claims Must Be Dismissed Because the Guidelines Are Non-Binding

Even if viewed independently from the APA claim, BAF's constitutional claims in Counts V, VI, VII and VIII must be dismissed for failure to state a claim because the Court has concluded that the Guidelines are non-binding interpretive rules, Mem. Op. at 16, that do not determine rights, obligations, or legal consequences.  *Id*. at 13.  BAF's claim that non-binding guidance impedes the free exercise of any fundamental right (Count V), Opp. at 16-17, that it violates equal protection by "mandating" a race-based classification (Count VI), *id*. at 18, that it represents an exercise of power that exceeds the Indian Commerce Clause (Count VII), *id*. at 19, or commandeers state entities (Count VIII), *id*. at 20, is not "plausible on its face" and must be dismissed as a matter of law.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. BAF Cannot Otherwise Demonstrate Subject-Matter Jurisdiction to Challenge the Guidelines, and Its Claims Fail as a Matter of Law

### A. BAF Does Not Itself Have Standing and Cannot Assert the Interests of Birth Parents

Even if the Court's Memorandum Opinion did not determine the outcome, BAF has not alleged injury caused by the Guidelines that would be redressable by their withdrawal. *See supra* page 4.[5]  Contrary to BAF's assertion, and as a matter of law, BAF did not have to expend significant resources in order to "comply" with the Guidelines, and, moreover, such "compliance" would promote, rather than impede, BAF's ability to find loving homes.  Mot. at 12 (noting that Guidelines are not binding and will not become a condition of licensing until Arizona adopts them); *id.* at 13 n.10 (criticizing the notion that an Indian family could not also be "loving").[6] Whether the Guidelines' non-binding nature is more detrimental to BAF's claim to injury or BAF's claim for causation, *see* Opp. at 6, is of no matter because neither is susceptible to the subjective standard BAF would have the Court apply.  *See id.* at 6-8 (grounding allegations of

---

[5] The cases that BAF cites do not alter this analysis.  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) and *Moseke v. Miller and Smith, Inc.*, 202 F. Supp. 2d 492, 497-98 (E.D. Va. 2002) establish that civil-rights organizations are injured when they must divert resources from counseling and referral to combatting discriminatory behavior by defendants that violates the Fair Housing Act ("FHA").  Unlike these organizations, however, BAF's mission of finding children safe and loving homes is not in tension with the Guidelines.  *Compare* Compl. ¶ 42 *with Moseke*, 202 F.Supp.2d at 495 (describing mission of plaintiff group as seeking to protect disability rights). Nor does BAF claim that it diverted resources to substantive efforts to combat discrimination, as, for example, by investigating discriminatory practices.  *Compare* Compl. ¶¶ 40-45 *with Moseke*, 202 F.Supp.2d at 499 (detailing plaintiff's efforts to identify defendant's alleged discriminatory acts).  Whereas litigation expenses in *Moseke* were incidental to other efforts, *see id.* at 498 n.8, BAF's injury is comprised entirely of anticipatory "compliance" costs and litigation costs. Finally, standing under the FHA is not restricted by prudential considerations, so the *Moseke* plaintiff had to show only that it had been injured.  *Id.* at 497.  Injury alone will not suffice to permit BAF to invoke the interests of birth parents, however, because ICWA does not provide comparable exception from general principles of standing.

[6] Defendants also dispute that the Guidelines impede BAF's ability to ensure that children find only non-Indian homes, but this mission is not properly alleged in the Complaint and thus is irrelevant for purposes of the instant motion.

injury and causation on a subjective belief that the Guidelines are binding).  To the extent that

Plaintiffs maintained a sincere, but idiosyncratic, view that the Guidelines were binding,[7] that

belief is not sufficient to describe injury in fact, nor can it create causation where none exists.  *See*

*Diamond v. Charles*, 476 U.S. 54 (1986) (harm to personal and professional interests does not

create a justiciable case or controversy).  And while it is ironic that BAF interprets non-binding

guidance as mandatory yet does not consider the Memorandum Opinion that *it solicited* from this

Court to be authoritative enough to prove otherwise, Opp. at 7, such a moving target also raises

questions about the ability of this Court to provide redress for what are evidently no more than

political concerns.[8]

BAF's remaining constitutional claims also fail for lack of subject-matter jurisdiction

because BAF cannot assert the interests of unspecified birth parents in order to challenge alleged

violations of equal protection and due process by the Guidelines (Counts V, VI, and VII), or a

---

[7] Not even all Plaintiffs to this case appear to have believed that the Guidelines were, in fact, binding.  *See, e.g.*, Mem. Op. at 8-9 (noting that Plaintiffs acknowledged in comments on the proposed regulations that they were not bound by the Guidelines).  BAF claims that "[n]othing . . . would indicate to a state court that the matters covered by the Guidelines were within 'the broad and legitimate discretion' of that state court."  Opp. at 7.  But where state courts have considered the Guidelines – as Arizona state courts might have if BAF had given them a chance – the courts have reached the unremarkable conclusion that they are non-binding just like their predecessor, the 1979 guidelines.

[8] In its defense of redressability, BAF also questions whether state courts could apply the principles contained in the Guidelines even if they were withdrawn.  But there is no need to speculate, because state courts have already applied interpretive rules no longer in effect.  *In re Interest of Nery V.*, 864 N.W.2d 728, 736 (Neb. Ct. App. 2015) (looking to the 1979 guidelines even after the 2015 Guidelines went into effect).  The remainder of BAF's argument evidences a fundamental misunderstanding as to how the Guidelines work:  The Guidelines operate *only* through state decisional law interpreting ICWA, so there is in fact no "significant increase in the likelihood of obtaining relief" should the Guidelines be vacated.  Removing the Guidelines would not prevent the State from applying the same concepts through state decisional law.  And applying the Guidelines would not disserve birth parents' ability to choose an adoptive placement, or BAF's ability to find a safe, loving home.

violation of the Indian Commerce Clause (Count VII).[9] As an initial matter, BAF itself does not have standing, which is a prerequisite for asserting the rights of a third party. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 n.2 (2004); *see supra* pages 3-4, 6-7.

Even if BAF could maintain suit, there is no genuine obstacle that prevents unspecified birth parents from asserting their rights such that BAF is, by default, the "best available proponent" of their equal protection or due process claims, or of any claim to invalidate ICWA. *Singleton v. Wulff*, 428 U.S. 106, 116 (1976). Indeed, courts have previously held that there is no hindrance to direct participation where a third party is currently or was previously a party to the case, as are birth parents D.V. and N.L. *See Equal Rights Ctr. v. Abercrombie & Fitch Co.*, 767 F. Supp. 2d 510, 523 (D. Md. 2010) (no third-party standing where third party is also a co-plaintiff); *Miller v. Albright*, 523 U.S. 420, 448 (1998) (same where third party's absence was self-imposed). The same concerns that BAF alleges as a "significant obstacle" to birth parents bringing suit in their own names – avoiding publicity, the supposedly short window of time to bring suit, and an inability to fund litigation – would have applied to D.V. and N.L. as well. *See* Compl. ¶¶ 12, 34, 35 (noting that D.V. and N.L. wished to protect their confidentiality, wanted their child adopted promptly, and nonetheless retained counsel). Nor do these describe a "hurdle preventing a third party from asserting . . . her own rights" that is "high indeed." *Lucas v. Henrico Cnty. Sch. Bd.*, 822 F. Supp. 2d 589, 605 (E.D. Va. 2011) (citing *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205 (4th Cir. 2002)). Confidentiality is easily addressed by the use of pseudonyms or initials, indigency is not a basis for failing to assert one's own rights,

---

[9] BAF never alleged any direct injury from ICWA in the first place, so any challenge to the statute must be based on third-party standing to represent the interests of unspecified birth parents. *See* Compl. ¶¶ 40-45 (alleging only that ICWA "sharply limits" the ability of birth parents to direct adoptive placement).

*see Lucas*, 822 F. Supp. 2d at 605, and the short window of time that the Court found problematic in cases regarding contraception or abortion is not at issue here.

Furthermore, BAF cannot claim a close relationship with unspecified birth parents when that relationship is, as a matter of law and on the basis of the pleadings, defined by conflict.  As the Supreme Court concluded in *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004), third-party standing is inappropriate where the interests of the litigant and the third-party "are not parallel and, indeed, are potentially in conflict."  *Id.* at 15.  Here, Defendants need not point to anything in the Complaint or to facts outside the pleadings to demonstrate that BAF's interests are "potentially in conflict" with unspecified birth parents, Opp. at 10, because it says so in the law. In Arizona, an adoption agency may not even represent birth parents in an *adoption proceeding*, much less in a federal lawsuit in which the agency seeks to avail itself of birth parents' fundamental rights in order to overturn laws designed to protect their children, without birth parents' knowledge of and consent to the agency's adverse interests vis-à-vis its adoptive-parent clients.  *See Taeger v. Catholic Family & Cmty. Servs.*, 995 P.2d 721, 728-29 (Ariz. Ct. App. 2000); Mot. at 10 n.5 (explaining why such protections are necessary).

Beyond that inherent conflict, the allegations of the Complaint itself demonstrate that the interests of BAF and of unspecified birth parents are not in parallel and that third-party standing is inappropriate in this case.  BAF bases its injury on the Guidelines' recommendation that adoption agencies present parents of an Indian child with adoption options that include placements within the tribe or extended family.  Compl. ¶ 42 (alleging that BAF must "conduct a 'diligent search' for an adoptive placement that fulfills ICWA's placement preferences") (internal citation omitted).  The injury that BAF alleges on birth parents' behalf, however, is delay in achieving the desired placement of their child, Compl. ¶ 44, which is not required by or even a logical

9

outgrowth of the Guidelines.  And vacating the Guidelines and invalidating ICWA, as BAF

requests, will not increase birth parents' ability to control the adoptive placement of their children

– it will only decrease the diversity of the options with which they are presented.  *See* 25 U.S.C. §

1915(a) (providing that court may deviate from placement preferences for "good cause"); 80 Fed.

Reg. 10,146, 10,158 (Feb. 25, 2015) (§F.4(c)(1), (3)) (recommending that courts consider request

of the birth parents as "good cause" after they have reviewed preferred alternatives).

Finally, BAF has not alleged on behalf of unspecified birth parents injury sufficient to

demonstrate standing to challenge the Guidelines or ICWA.  *See* Mot. at 4-8.  Any impediment to

their children's placement is speculative because BAF does not allege that unspecified birth

parents are currently engaged in adoption proceedings, that any party to those proceedings would

challenge their preferred placement, why any such challenge would be likely to succeed, or that

an unfavorable outcome would be caused by the Guidelines as opposed to other law.  The lone

case that BAF cites is inapposite, not only because it addresses standing in the "relaxed . . .

context" of a First Amendment claim, *see ACLU v. Holder*, 652 F. Supp. 2d 654, 667 (E.D. Va.

2009), but also because plaintiffs there *actually filed a permit application* and, after *actually

experiencing delay*, sued *the entity responsible for the delay*.  *See Covenant Media of S.C. LLC v.

City of North Charleston*, 493 F.3d 421, 425 (4th Cir. 2007).  BAF does not offer any opposition

to Defendants' argument that birth parents are not injured by ICWA, *see* Mot. at 4-8, and the

"stigma of discrimination" is an injury that Plaintiffs raise for the first time in their Opposition.

*See* Opp. at 9; *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (plaintiff's

"shifting characterization of . . . injury" gave the court "no confidence of a real need to exercise

the power of judicial review or that relief can be framed no (broader) than required by the precise facts to which the court's ruling would be applied") (internal quotations and citations omitted).[10]

B.   BAF Does Not Deny that Its Claims Are Unripe Because the Underlying Action is Not Final or Independent of Future Uncertainties

In response to Defendants' argument that its claims are unfit for judicial decision, BAF answers only that whether the Guidelines exceed statutory authority or violate the Constitution are purely legal questions. Opp. at 26 n.8. But, accepting BAF's conclusion for the purpose of argument, it does not resolve the question of ripeness: Claims are fit for judicial decision, not only "when the issues are purely legal," but also "when the action in controversy is final and not dependent on future uncertainties." *Doe*, 713 F.3d at 758. Here, the action in controversy is not final – indeed, BAF suggests it has not even begun, *see* Opp. at 25 (arguing that abstention would apply only to *ongoing* state proceedings) – and BAF's uncertainty as to whether the Guidelines are or are not binding, Opp. at 6, only serves to illustrate that its claims are too premature for federal consideration. If, as the Fourth Circuit demands, BAF instead waited for adoption proceedings to begin and gave the state court an opportunity to consider whether it would apply

---

[10] Although BAF posits an alternate theory for standing by which birth parents are injured when Defendants "induce" state courts to violate their liberty interests, Opp. at 9, the *Bivens* standards BAF relies upon do not assist here. *See Dodds v. Richardson*, 614 F.3d 1185, 1202-03 (10th Cir. 2010). BAF has not pled a *Bivens* action, *see infra* Section II.B.4, nor does it cite any authority for the notion that standards sufficient for finding that an "official's own individual's action violated the Constitution" for purposes of obtaining damages from the official in her individual capacity, *Iqbal*, 556 U.S. at 676, apply to the causation prong of the standing analysis. Even if those standards were interchangeable, they have no purchase in this case. *Dodds* suggests that a government official may be held liable in her individual capacity for promulgating a policy that is itself unconstitutional and that one of her subordinates is *bound* to follow. *See* 614 F.3d at 1202-03. But it is another thing entirely to suggest that such liability (or Article III causation) may be linked to the promulgation of non-binding Guidelines, from which state courts – tribunals of a *separate sovereign* – "are free to exercise their discretion and depart." Mem. Op. at 15. Put simply, as this Court has already held, "mere agency influence over third parties is not sufficient to create rights, obligations, or legal consequences for purposes of judicial review." *Id.* at 12 (quoting *Flue Cured-Tobacco Corp. v. EPA*, 313 F.3d 852, 860 (4th Cir. 2002)).

the Guidelines, it would come to this Court with "an injury – if it still exists . . . – that affects

[plaintiff] with finality." *Doe*, 713 F.3d at 754 n.5.  As is, BAF's claims are entirely dependent

on future uncertainties and must be dismissed.  *See* Mot. at 14-15.[11]

B.    <u>BAF's Opposition Does Not Salvage Its Substantive Claims, Which Fail to State</u>
<u>Any Grounds for Relief and Must be Dismissed</u>

This Court has concluded once that the Guidelines are not justiciable as "final agency

action."  Mem. Op. at 10.   To the extent that the Memorandum Opinion is not determinative of

the present motion, Defendants now request that the Court formally extend its holding to dismiss

Plaintiffs' Complaint for lack of subject-matter jurisdiction under the APA and because BAF has

not stated in the Complaint an APA claim sufficiently "plausible on its face" to withstand a

motion to dismiss.  *See Iqbal*, 556 U.S. at 678.

1.    *BAF Has Not Demonstrated that the Guidelines are Final Agency Action*
*for Jurisdiction Under the APA or That They Are Contrary to Law*

Having conceded that the Guidelines neither determine rights nor obligations sufficient to

establish jurisdiction under the APA for review as "final agency action," Opp. at 3, BAF now

rests on a theory that the Guidelines nonetheless "cause legal consequences."  *Id*. (citing *Bennett*

*v. Spear*, 520 U.S. 15, 177-78 (1997)).  But BAF's definition of "legal consequences" has no

limiting principle, effectively drawing into the APA's web every federal order or rule that aspires

to some impact, whether direct or indirect, on legal proceedings.  *See id*. at 3-4 (arguing that the

Guidelines cause legal consequences because they were intended to affect legal proceedings).

BAF cites no authority for this remarkable extension of judicial review, and to advance it is to

swim upstream against a tide of contrary Fourth Circuit precedent.  *See, e.g., Flue-Cured Tobacco*

---

[11] BAF does not claim that it would suffer hardship from this Court withholding review.  *See, e.g.*,
Opp. at 26 n.8.

*Coop. Stabilization Corp. v. U.S.E.P.A.*, 313 F.3d 852, 860 (4th Cir. 2002) ("[E]ven when agency action significantly impacts the choices available to the final decisionmaker, this distinction does not transform [it] into reviewable agency action under the APA.").  Even if the law permitted, however, BAF cannot demonstrate that legal consequences flow from the Guidelines when it concedes that Defendants do not enforce the Guidelines, and makes no argument that Defendants otherwise treat them as controlling.  Opp. at 3, 5.

The remainder of BAF's claims amount to a challenge that the Guidelines may be held "unlawful and set aside," *id*. at 12, and are addressed in turn below.

2.   *BAF Cites No Authority to Support Its Equal Protection, Due Process, or Indian Commerce Clause Claims*

**Equal Protection**.  BAF's only response to Defendants' assertion that the Guidelines are not race-based is to argue that they would be as applied to children who have never been domiciled on an Indian reservation and "whose only connection to the tribe is biological." Opp. at 18.  Contrary to BAF's novel proposition, one's political membership in a federally recognized Indian tribe does not cease as soon as that member crosses out of the reservation.  And, as Defendants explained in their Motion, an "Indian child" by definition has more than a mere biological connection to their Tribe: she is herself a member, or is the biological child of a member and eligible for membership.  25 U.S.C. § 1903(4); *see* Mot. at 20.[12]

---

[12] BAF rejoins that, if applied to an unborn child of one of its unspecified birth parents, the Guidelines would constitute race-based discrimination.  BAF does not explain why this would offend equal protection, but the discussion of the Existing Indian Family doctrine that follows suggests that BAF believes that an unborn child could not yet have any non-biological connection to their Tribe; in other words, that the political affiliation of the child could not be measured through the parent's membership and the child's eligibility (when born).  This scenario is preposterous for many reasons, not least of which is that the Guidelines would not apply to unborn children, but is truly cynical here where, on the same page, BAF asserts an absolute right of birth parents to direct the upbringing of the same unborn child – based solely on biology.  *See* Opp. at 18.

13

**Due Process**.  BAF concedes that the Fourth Circuit has not recognized a constitutional right of birth parents to direct their child's adoptive placement, but asks that this Court, for the first time, endorse such a right on the basis of the Supreme Court's decision in *Wisconsin v. Yoder*, 406 U.S. 205 (1972).[13]  *See* Opp. at 16.  Not only should the Court be "extremely reluctant to breathe still further substantive content into the Due Process Clause," *Michael H. v. Gerald D.*, 491 U.S. 110, 122 (1989), but *Yoder* has little applicability here, and certainly does not support judicial recognition of the new right envisioned by BAF.  There, the Court recognized the right of Amish parents to withdraw their children from public school at age 16 in furtherance of their religious beliefs.  406 U.S. at 234.  It determined that "the interests of parenthood . . . combined with a free exercise claim" required "more than . . . a reasonable relation to some purpose within the competency of the State" in order to sustain the validity of state regulation under the First Amendment.  *Id*. at 233-34.  But the Court, in examining the free exercise claim, stressed that "[a] way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation of education if it is based on purely secular considerations." *Id*. at 215. Moreover, *Yoder* says little about the rights of parents apart from the right to free exercise of religion, nothing about the rights of parents who give their children up for adoption, and qualifies its holding by noting that – even linked to a free exercise claim – a parent's power is subject to limitation if it jeopardizes the health or safety of the child or has the potential for significant social burdens.  *Id*. at 234.

In contrast, the Supreme Court has subsequently held that the interests of a biological parent in something as "consequential" as custody, Opp. at 16, may be outweighed completely by

---

[13] *Yoder* was subsequently abrogated by *Employment Division, Department of Human Resources v. Smith*, 494 U.S. 872 (1990), then reinstated by passage of the Religious Freedom Restoration Act, as recognized in *Holt v. Hobbs*, 135 S. Ct. 853 (2015).

the state's interests.  *See, e.g.*, *Michael H.*, 491 U.S. at 128.  And, unlike the compulsory

attendance law in *Yoder*, the Guidelines do not impede birth parents' interests:  They are non-

binding guidance designed to ensure an inclusive process, not a particular outcome.[14]  Finally,

BAF argues that any burden that the Guidelines might impose on the as-of-yet unrecognized right

of birth parents to direct placement could not be narrowly tailored to keep Indian children with

their community because "most of BAF's clients' children have not yet been born."  Opp. at 17.

This is the same internally inconsistent argument that BAF makes with respect to equal protection

and it is equally irrelevant here.  *See supra* note 12.  Alternatively, BAF again cites *Yoder* and

broadly suggests that where a fundamental right is burdened by a statute, the statute must always

yield.  That proposition runs counter to decades of due-process precedent and must be rejected.

*See, e.g.*, *Roe v. Wade*, 410 U.S. 113, 155 (1973) ("[R]egulation limiting [certain fundamental]

rights may be justified only by a 'compelling state interest' and . . . must be narrowly drawn to

express only the legitimate state interests at stake.") (internal citations omitted); *Adarand*

*Constructors, Inc. v. Pena*, 515 U.S. 200, 237 (1995) ("[W]e wish to dispel the notion that strict

scrutiny is 'strict in theory, but fatal in fact.'") (internal citations omitted).

    **Indian Commerce Clause**.  To attack the Guidelines, BAF claims that ICWA exceeds

Congress's authority under the Indian Commerce Clause ("ICC").  *See* Opp. at 19-20.  BAF

provides no analysis of the ICC itself, and resorts instead to traditional Interstate Commerce

Clause analysis, ignoring that the Supreme Court has emphatically distinguished the two: "The

---

[14] The Guidelines do not, as BAF argues, "disable" a sole-custodial birth mother or a deceased
parent from directing placement of an Indian child.  Not only are the Guidelines not binding, but
this factual scenario is purely hypothetical and BAF does not cite to any case in which the
Guidelines were applied to such an end.  Even if the Guidelines were mandatory, however, it is
unclear that either parent in this scenario would be prevented from the placement they desire for
their child so long as they had reviewed compliant placements also.

extensive case law that has developed under the Interstate Commerce Clause . . . is premised on a structural understanding of the unique role of the States in our constitutional system that is not readily imported to cases involving the Indian Commerce Clause." *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 192 (1989); *see also United States v. Lomayaoma*, 86 F.3d 142, 145 (9th Cir. 1996) (noting the distinction between principles of federal Indian law and "those governing federal regulation of interstate commerce.").

Moreover, BAF incorrectly asserts that the ICC "is the only plausible constitutional font of congressional authority to regulate Indian affairs," when in fact, Congress's authority in this area is *not* drawn solely from the ICC.  Federal legislative authority also comes from the President's treaty power, U.S. CONST. Art. II, § 2, cl. 2, which "has often been the source of the Government's power to deal with the Indian tribes." *Morton v. Mancari*, 417 U.S. 535, 552 (1974).  The Supreme Court has also recognized that Congress' power in this area stems from "the Constitution's adoption of preconstitutional powers necessarily inherent in any Federal Government . . . ," *United States v. Lara*, 541 U.S. 193, 201 (2004), as well as the federal government's assumption of a trust obligation toward Indian tribes.  *Mancari*, 417 U.S. at 552; Cohen's Handbook of Federal Indian Law § 5.01, at 383-91 (Nell Jessup Newton ed., 2012).

3.    *The Guidelines Do Not Commandeer State Entities*

BAF's Opposition cannot resuscitate Tenth Amendment claims alleging that non-binding Guidelines "requir[e] the States to address particular problems, []or command the States' officers . . . to administer or enforce a federal regulatory program." *United States v. Printz*, 521 U.S. 898, 935 (1997).  Just as Congress may pass laws enforceable in state courts, *New York v. United States*, 505 U.S. 144, 178 (1992), it may also direct state judges to enforce them.  *Id*.  Statutes enacted by the very first Congress, for example, established "that the Constitution was originally

understood to permit imposition of an obligation on state judges to enforce federal prescriptions, insofar as those prescriptions related to matters appropriate for the judicial power." *Printz*, 521 at 907.   BAF argues that the Guidelines "mandat[e]" investigation into whether the child is an "Indian child" and notice to relevant tribes, which "constitute executive functions." *See* Opp. at 22.  In fact, these are requirements of the statute, *see* 25 U.S.C. § 1912(a) (requiring that notice be provided "where the court knows or has reason to know that an Indian child is involved"), and BAF cites no relevant authority for the proposition that such oversight of child-welfare laws are not "matters appropriate for the judicial power."[15]

Likewise, whether or not the federal government may dictate procedures in state-law causes of action generally, *see* Opp. at 22, it can certainly prevent the application of state procedural standards that would "stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Felder v. Casey*, 487 U.S. 131, 138 (1988) (quoting *Perez v. Campbell*, 402 U.S. 637, 649 (1971)).  As described above, ICWA was passed pursuant to congressional authority expressly granted in the Constitution.  *See supra* pages 15-16. Where a state court is applying the rights and protections provided for by ICWA, therefore, the federal government can act to prevent state "rules of practice and procedure" from "dig[ging] into substantive [federal] rights." *Brown v. Western Ry.*, 338 U.S. 294, 296 (1949).   BAF cites no authority to the contrary.  *See* Opp. at 23 (citing dicta from a Seventh Circuit concurrence and an

---

[15] The Seventh Circuit case that BAF cites, *Mother & Father v. Cassidy*, 338 F.3d 704, 710-11 (7th Cir. 2003), prohibits delegations from federal courts to state courts, but says nothing of Congress's power to pass laws enforceable in state courts or of a state court's investigative authority.  It does, however, have some bearing on redressability in this case, in that the Seventh Circuit expresses skepticism that any lower federal court could ever ensure compliance with an order to the state court given that lower federal courts are foreclosed by the *Rooker-Feldman* doctrine from subsequent review of state-court decisions.  *Id*. at 711; *see* Mot. at 8.

opinion by the Office of Legal Counsel that refers to procedures in the absence of any federal claim); *see also* Mot. at 29 n.26.

Finally, even if the Guidelines were binding, the Tenth Amendment's anti-commandeering principle would not reach regulation of private parties that imposes no requirements on States or state officials.  *See* Mot. at 30.  BAF's only response is to point to a handful of cases in which private agencies responsible for removal or foster care have been held liable as state actors under 42 U.S.C. § 1983.  Opp. at 21-22.  Leaving aside the lack of any authority applying state-action jurisprudence to a Tenth Amendment analysis, BAF has also not alleged a theory of state agency in the Complaint, Compl. ¶¶ 162-70, 224-28, and such a theory would only allow that private agencies may be subject to the same constitutional *limitations* as government actors – it would not confer upon private agencies the powers reserved to the States by the Constitution.  *See, e.g.*, *Perez v. Sugarman*, 499 F.2d 761, 764 (2d Cir. 1974).  Moreover, none of these cases consider whether private agencies conducting voluntary adoptions of children who are not neglected or abandoned may be held liable as state entities, nor is it clear that even their limited applicability to private agencies overseeing foster-care would find purchase in the Fourth Circuit.  *Compare Perez*, 499 F.2d at 765 (illegal removal); *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 738 (S.D.N.Y. 2006) (foster care); *Harris v. Lehigh Cnty. Office of Children & Youth Servs.*, 418 F. Supp. 2d 643, 651 (E.D. Pa. 2005) (foster care); *Smith v. Beasley*, 775 F. Supp. 2d 1344, 1354 (M.D. Fla. 2011) (foster care) *with Milburn v. Anne Arundel Cnty. Dep't of Soc. Servs.*, 871 F.2d 474, 479 (4th Cir. 1989) (concluding that "[t]he care of foster children is not traditionally the exclusive prerogative of the State").

4.      *BAF Has Failed to Plead a Bivens Action*

In a final effort to avoid this Court's ruling that Plaintiffs could not establish the necessary "causal connection between injury" and Interior's "issuance of the 2015 Guidelines," Mem. Op. at 9, BAF maintains that it has "also stated a valid *Bivens* claim against the individual Defendants," Opp. at 1.[16]  In this fashion, BAF attempts to incorporate the standards governing when a government official possesses the requisite personal involvement in putatively unconstitutional conduct to be liable in his or her individual capacity for money damages under *Bivens* to this standing inquiry.  For many reasons, the analogy is inapt; importantly, BAF has most certainly not even *pled* an actual *Bivens* action, let alone a "valid" one.

As this Court has recognized, *Bivens* represents an extremely-limited cause of action.  *See, e.g.*, *Lee X v. Casey*, 771 F. Supp. 725, 732 n.14 (E.D. Va. 1991).  More specifically, in *Bivens*, the Supreme Court recognized an implied right cause of action to remedy certain alleged unconstitutional conduct, to be brought only against an individual federal government official, and only for money damages.  *See Bivens*, 403 U.S. at 395-96; *see also FDIC v. Meyer*, 510 U.S. 471, 484 (1994) ("[O]ur decision in *Bivens* . . . held that an individual injured by a federal agent's alleged violation of the Fourth Amendment may bring an action for damages against the agent.").  Additionally, a *Bivens* cause of action only lies against a government official when sued in his or her *individual capacity*; as such, a plaintiff cannot bring a *Bivens* action "against either agencies

---

[16] The Complaint only mentions *Bivens* once in the Introduction, and none of its individual Counts either expressly names or generally describes a *Bivens* action.  *See* Compl. ¶ 1 ("This is an action under the Administrative Procedure Act, the cause of action to enforce provisions of the United States Constitution acknowledged in *Bivens*.").  BAF does not provide a full citation to the decision, but Defendants presume that BAF is referencing the limited remedy authorized by the Supreme Court in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

or officials [sued] in their official capacity." *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002),

*aff'd on other grounds*, 540 U.S. 614 (2004).  As the Tenth Circuit has synthesized this authority:

> There is no such animal as a *Bivens* suit against a public official tortfeasor is his or her official capacity.  Instead, any action that charges such an official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States.  Because a *Bivens* claim may not be brought directly against the United States as such, an "official capacity *Bivens* suit" would be an oxymoron.

*Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001).

But that is exactly how BAF describes its claims against the Secretary and Assistant Secretary of Interior in its own complaint.  BAF repeatedly avers that it is only seeking equitable relief, not money damages: BAF entitled its pleading "Complaint and Prayer for Declaratory and Injunctive Relief," Compl. at 1, and openly seeks only a series of "permanent injunction[s]" and "declaratory judgment[s]," *id.* at 53-54.  Moreover, BAF is suing Secretary Jewell and Assistant Secretary Washburn only in their official capacities.  *Id.* ¶¶14-15.  Because BAF's own allegations demonstrate that it is seeking only equitable relief from government officials sued in their *official* capacities, BAF has not pled a *Bivens* action.

## CONCLUSION

For the foregoing reasons, the Court should dismiss or abstain from hearing BAF's claims.

Respectfully submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY

By:      ____/s/_____
DENNIS C. BARGHAAN, JR.
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Fax:       (703) 299-3983
Email: dennis.barghaan@usdoj.gov

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

JOANN KINTZ
STEVEN MISKINIS
Indian Resources Section
CHRISTINE W. ENNIS
Law and Policy Section
Environment and Natural Resources Division
United States Department of Justice
REBEKAH KRISPINSKY                          P.O. Box 44378
Assistant Solicitor                         Washington, D.C. 20026
United States Department of the Interior    Email: steven.miskinis@usdoj.gov
                                            Telephone: (202) 305-0262
                                            Fax:       (202) 305-0275

DATE: October 26, 2015                      ATTORNEYS FOR DEFENDANTS

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to the following:

Jacob Stephen Siler
Gibson Dunn & Crutcher LLP (DC)
1050 Connecticut Avenue N.W., Suite 300
Washington, D.C. 20036
Email: jsiler@gibsondunn.com

<u>Date</u>: October 26, 2015            _____/s/_____

DENNIS C. BARGHAAN, JR.
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Fax:      (703) 299-3983
Email: dennis.barghaan@usdoj.gov

ATTORNEY FOR DEFENDANTS